UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THESE PONIES ARE MISERABLE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, et al.,<br><br>Defendants. | Case No. 2:23-cv-08330 HDV SK<br><br>**ORDER RE: DEFENDANTS' MOTION TO DISMISS [DKT. NO. 41]** |

1

I. INTRODUCTION

This case arises out of a pony ride in Griffith Park operated by a private vendor under contract with the City of Los Angeles. Plaintiff These Ponies Are Miserable (an unincorporated advocacy organization) and individual Plaintiffs (self-described "pony advocates") allege that the animals at this business were being mistreated, and engaged in a (successful) multi-year protest aimed at shuttering the pony ride. Once these peaceful protests began in 2021, however, the City of Los Angeles created a small "free speech zone" where all protests had to occur, adopted rules that limited the group's free speech activities, and arrested various Plaintiffs for violations of those rules. Plaintiffs assert violations of their First and Fourth Amendment rights and raise various state law claims relating to the arrests.

Before the Court is Defendants' Motion to Dismiss ("Motion") brought under Federal Rule of Civil Procedure 12(b)(6) [Dkt. No. 41]. Defendants argue that the claims in the Second Amended Complaint fail as a matter of law and are barred by qualified and government immunity.

Defendants' motion is denied, in part, and granted, in part. The Court concludes that, except for the fifth claim under the California Constitution, Plaintiffs' claims are properly and sufficiently pled. The Court also finds that Plaintiffs' more-than-plausible allegations concerning the City's "time, place, and manner" restrictions raise serious (and troubling) questions about whether the limitations were narrowly tailored and enforced in a non-discriminatory manner against all members of the public.

II. RELEVANT BACKGROUND

   A. Factual Background

Several years ago, Defendant City of Los Angeles ("City") entered into a contract with a private vendor to operate a pony ride attraction at Griffith Park. Second Amended Complaint ("SAC") [Dkt. No. 26] ¶¶ 30, 32. Plaintiffs These Ponies Are Miserable ("TPAM") and numerous individuals (including individual Plaintiffs)[1] engaged in a longstanding series of protests between

---

[1] Denzil Rodrigues, Alondra Reveles, Amanda Lundberg, Annie Abram, Aouie Goodnis, Arameh Mirzakhanian, Elvia Sedano, Eric Castro, Jamie Sanders, Jeanie Lee, Jeff Fleiss, Maria Rios, Michael Fujimori, Michael Hegger, Peter Lecki, Ray Sandoval, Rubi Ramirez, Sarah Segal, and Young Yi. SAC ¶ 11.

2

September 2021 and December 2022 because they believed the ponies were abused, neglected, and mistreated. *Id.* ¶¶ 4, 10, 11, 35.

In September 2021, City officials implemented what they called a "free speech zone" approximately eighty (80) feet away from the pony ride business ("Free Speech Zone"). *Id.* ¶ 42. Defendant Los Angeles Park Ranger Chief Joe Losorelli directed his rangers to order individuals to confine their expressive activity to the Free Speech Zone or face arrest under California Penal Code § 602.1(a).[2]  SAC ¶ 43.

From September 2021 to April 12, 2022, Plaintiffs protested the pony ride business and did so (at least as alleged) without blocking, obstructing, threatening, or intimidating anyone. *Id.* ¶ 48. During that time, on at least five occasions, Defendants arrested Plaintiffs Lecki, Reveles, Castro, Lundberg, Rios, and Hegger for engaging in expressive activity outside of the pony ride business-adjacent free speech zone. *Id.* ¶¶ 55–63, 75–96. Employees of the pony ride purportedly engaged in similar expressive activity (countering the protesters) but were not arrested. *Id.* ¶¶ 51, 52.

In May and June 2022, Plaintiff Lecki was arrested three times for violating Los Angeles Municipal Code § 63.44(B)(4), which prohibits amplified sound in city parks. *Id.* ¶¶ 100–11. Plaintiffs allege that employees and customers of the pony ride business used amplified sound without consequence. *Id.* ¶ 105.

---

[2] California Penal Code § 602.1(a) states:

> Any person who intentionally interferes with any lawful business or occupation carried on by the owner or agent of a business establishment open to the public, by obstructing or intimidating those attempting to carry on business, or their customers, and who refuses to leave the premises of the business establishment after being requested to leave by the owner or the owner's agent, or by a peace officer acting at the request of the owner or owner's agent, is guilty of a misdemeanor, punishable by imprisonment in a county jail for up to 90 days, or by a fine of up to four hundred dollars ($400), or by both that imprisonment and fine.

On July 7, 2022, the City promulgated new rules establishing a "safety zone" within fifty (50) feet of any active corral. ("July 2022 Rules")[3] *Id.* ¶¶ 113–20; Exhibit 2. In pertinent part, the rules state:

> 3) No singing, chanting, shouting, or yelling at a volume that reaches a pony or person inside of any corral.
> 4) No amplified sound.
> …
> 10) No other objects or noises that a reasonable person—in light of the above prohibitions—should recognize might frighten or startle a pony or distract or disrupt a ride.

*Id.* The July 2022 Rules also require, "No display of signs, posters, pennants, or banners, whether handheld, affixed to stakes, sticks, frames, or not, that are larger than 8.5" x 11" in size" within fifteen (15) feet of any active corral. *Id.* Defendants enforced the July 2022 Rules against Plaintiffs and not against any pony ride employees, customers, or other members of the public. *Id.* ¶¶ 122–31, 168–72.

### B. Procedural Background

Plaintiffs filed claims to comply with California's Tort Claims Act on March 18, 2022 and June 9, 2023. *Id.* ¶ 3. They then initiated this action on October 3, 2023, and eventually filed a Second Amended Complaint. [Dkt. Nos. 1, 26]. Plaintiffs sue the City of Los Angeles and Los Angeles Park Ranger Chief Joe Losorelli, as well as Park Ranger Captain Patrick Joyce; Senior Park Ranger Felix Renteria; and Park Rangers Brendan Wylie, Daniel Brewester, David Ebner, "FNU Hill,"[4] Joseph Fuentes, Joshua Smith, Larry Khou, Sean Kleckner, and Sonya Sharp (collectively, "Individual Defendants"). In the SAC, Plaintiffs assert violations of the First Amendment; Fourth Amendment; California Constitution, Article I, Sections 2 and 3; Tom Bane Civil Rights Act (Cal.

---

[3] Under the July 2022 Rules, an "active corral" includes "those corrals with ponies inside and those in use by patrons of the pony rides." SAC, Exhibit 2.

[4] Defendant Hill "has not yet been identified but, on information and belief, Hill is actually Ebner who was misidentified in various documents." SAC ¶ 19.

4

1  Civ. Code § 52.1); the Ralph Act (Cal. Civ. Code. § 51.7); and battery, false imprisonment, and
2  negligence.  Plaintiffs seek damages and civil penalties.  SAC at 77–78.
3        On February 26, 2024, Defendants filed a Motion to Dismiss under Federal Rule of Civil
4  Procedure 12(b)(6) [Dkt. Nos. 41, 47], which has been fully briefed.  *See* Plaintiffs' Opposition
5  ("Opp.") [Dkt. No. 45]; Defendants' Reply [Dkt. No. 46].  The Court heard oral argument on
6  April 18, 2024 and took the Motion under submission.  [Dkt. No. 48].

7  **III.  LEGAL STANDARD**

8        Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim
9  upon which relief may be granted.  "To survive a motion to dismiss, a complaint must contain
10 sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
11 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570).
12 "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw
13 the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at
14 678.  Only where a plaintiff fails to "nudge[] [his or her] claims . . . across the line from conceivable
15 to plausible[,]" is the complaint properly dismissed.  *Id*. at 680.
16       While the plausibility requirement is not a probability assessment, it demands more than "a
17 sheer possibility that a defendant has acted unlawfully." *Id*. at 678.  The determination of whether a
18 complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing
19 court to draw on its judicial experience and common sense." *Id*. at 679.

20 **IV.  DISCUSSION**[5]

21       **A. First Amendment Violation**
22       Plaintiffs' first and third causes of action assert violations of the First Amendment as
23 unreasonable time, place, or manner restrictions.  Defendants argue these claims fail as a matter of
24 law because the restrictions were reasonable.  Motion at 5–13.
25

---

26 [5] Defendants ask the Court to take judicial notice of thirteen exhibits in support of its Motion.
27 Request for Judicial Notice ("RJN") [Dkt. No. 41-2]; *see also* Opp. at 2–3 (opposing judicial notice of Exhibits C, E, F, G, H, I, J, and M).  Since the sources of these documents can be readily
28 determined, the Court grants Defendants' request.  *See* Fed. R. Evid. 201(b).

1     To determine whether a "time, place, or manner" restriction is reasonable, courts consider
2  whether the restrictions (1) are justified without reference to the content of the regulated speech,
3  (2) are narrowly tailored to serve a significant governmental interest, and (3) leave open ample
4  alternative channels for communication of the information. *Ward v. Rock Against Racism*, 491 U.S.
5  781, 791 (1989) (citation omitted). A restriction is narrowly tailored if it does not "burden
6  substantially more speech than is necessary" to achieve a substantial government interest. *Id.* at 799.
7  "The failure to satisfy any single prong of this test invalidates the requirement." *Grossman v. City of*
8  *Portland*, 33 F.3d 1200, 1205 (9th Cir. 1994).
9     The crux of Defendants' argument is that the Ninth Circuit's recent opinion in *Camenzind v.*
10 *California Exposition & State Fair*, 84 F.4th 1102 (9th Cir. 2023), precludes Plaintiffs' claim
11 regarding the Free Speech Zone. There, the Ninth Circuit found the free speech zones to be
12 narrowly tailored because they were positioned next to entry gates, "a prime location that provides
13 speakers with exposure to virtually everyone who enters the fairgrounds." *Id.* at 1114. The free
14 speech zones in *Camenzind* were found to allow the plaintiff to engage in expressive activity without
15 blocking narrow walkways and causing attendees to potentially stray into auto traffic, which served
16 the substantial government interest of public safety. *Id.*
17     Defendants' argument fails for at least two reasons.
18     First, the City's Free Speech Zone in this action is arguably much different (at least as
19 alleged). In *Camenzind*, anyone entering the fairgrounds had to walk "within a few dozen feet" of
20 the free speech zones. *Id.* at 1106. Here, there are multiple routes from which attendees can walk to
21 the pony ride business, thus greatly limiting Plaintiffs' exposure to their intended audience. SAC
22 ¶ 47. Indeed, "Plaintiffs would have to shout for extended periods of time to attempt to reach distant
23 individuals." *Id.* ¶ 167. Accepting these allegations as true, as the Court must for purposes of this
24 Motion, the Court cannot say as a matter of law that the Free Speech Zone was narrowly tailored.
25     And second, the SAC sufficiently alleges that both the Free Speech Zone and the July 2022
26 Rules left Plaintiffs with few alternative channels to communicate their messages and improperly
27 isolated the Plaintiffs from the public. SAC ¶¶ 122, 130, 164, 167. Courts have recognized these
28 limitations as grounds for invalidating a municipal restriction. *See, e.g., Long Beach Area Peace*

*Network v. City of Long Beach*, 574 F.3d 1011, 1025 (9th Cir. 2009) ("Alternatives are not ample if the speaker is not permitted to reach the intended audience, if there is no opportunity for spontaneity, or if the alternatives are overly costly or inconvenient." (citations omitted)); *Cuviello v. City & Cnty. of San Francisco*, 940 F. Supp. 2d 1071, 1089 (N.D. Cal. 2013) (finding the restriction at issue did not leave open ample alternative channels for communication since the plaintiffs "were effectively sequestered from the vast majority of even spectators to whom they wished to communicate"). The SAC specifically alleges that the volume, amplification and noise restrictions included in the July 2022 Rules threatened Plaintiffs' ability to communicate effectively against a backdrop of pony ride employees shouting and clapping at ponies, vehicular traffic noise, the business' public address system, and customer's own amplified sound. That is enough for pleading purposes. *Cf. Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1229 (9th Cir. 1990) ("[A]n alternative mode of communication may be constitutionally inadequate if the speaker's ability to communicate effectively is threated." (citation omitted)).

The Court notes that Plaintiffs raise serious questions about whether a strict scrutiny analysis should be applied to the Free Speech Zone and the July 2022 Rules, pointing to numerous instances where these same rules relating to signs and amplified sound were not enforced against customers of the pony ride and the business itself. *See* Opp. at 5-10; SAC ¶¶ 168, 169, 171, 172. Plaintiffs are correct that, if true, these (disturbing) allegations could trigger heightened scrutiny based on a finding that the restrictions were not content neutral. *See Reed v. Town of Gilbert*, 576 U.S. 155 (2015); *Berger v. City of Seattle*, 569 F.3d 1029 (9th Cir. 2009). But a ruling on the applicable constitutional standard is not necessary to adjudicate the pleading issues raised in this Motion, and the Court therefore declines the invitation to address this complex question at this time.

### B. Fourth Amendment Violation

Plaintiffs' second and fourth causes of action assert violations of the Fourth Amendment's prohibition of unreasonable seizures. Defendants argue that these claims should be dismissed because (1) the allegations of probable cause are conclusory and (2) a reasonably prudent officer would have had probable cause to make an arrest. Motion at 14–16.

"A warrantless arrest of an individual in a public place for a crime committed in an officer's presence violates the Fourth Amendment if the arrest is not supported by probable cause." *Blankenhorn v. City of Orange*, 485 F.3d 463, 470–71 (9th Cir. 2007). Such probable cause exists "when the facts and circumstances within [an officer's] knowledge are sufficient for a reasonably prudent person to believe that the suspect has committed a crime." *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1076 (9th Cir. 2011) (citations omitted). This analysis involves the facts known to the officer at the time of the arrest, and the statute to which those facts apply. *Id.*; *see also NAACP of San Jose/Silicon Valley v. City of San Jose*, 562 F. Supp. 3d 382, 404 (N.D. Cal. 2021); *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984) ("[I]n a § 1983 action the factual matters underlying the judgment of reasonableness generally mean that probable cause is a question for the jury . . . .").

Plaintiffs plausibly allege that there was no probable cause for each arrest. For example, as to the arrests under Cal. Penal Code § 602.1, Plaintiffs allege that they were not engaging in any activity that would obstruct or intimidate any person and were thus in compliance with the law. *See, e.g.*, SAC ¶¶ 75, 77, 79, 81, 83, 88, 89, 92, 94. Accepting these facts as true, they sufficiently state a viable Fourth Amendment claim. Moreover, at this stage the Court cannot fully consider whether probable cause existed as a matter of law.

### C. Qualified Immunity

To resolve questions of qualified immunity, courts consider (1) whether the facts allege a violation of a constitutional right and (2) whether the right at issue was "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted). Although "a case directly on point" is not required "for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7–8 (2021). Moreover, an officer who relies on an ordinance is ordinarily entitled to qualified immunity. *Grossman*, 33 F.3d at 1209. But "an officer who unlawfully enforces an ordinance in a particularly egregious manner, or in a manner which a reasonable officer would recognize exceeds the bounds of the ordinance, will not be entitled to immunity even if there is no clear case law declaring the ordinance or the officer's particular conduct unconstitutional." *Id.* at 1210. Dismissal under Rule 12(b)(6) based on qualified immunity is only

appropriate when a court "can determine, based on the complaint itself, that qualified immunity applies." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (reversing the district court's grant of qualified immunity because the complaint pled a plausible claim); *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001) (reversing Rule 12(b)(6) dismissal on qualified immunity grounds).

The Court cannot do so. Based on the facts alleged in the SAC, the Court cannot conclude at this stage that qualified immunity is applicable.[6] *See O'Brien*, 818 F.3d at 936 (acknowledging that defendants may move for summary judgment based on qualified immunity once the evidentiary record has been developed through discovery).

### D. Violation of the California Constitution

Plaintiffs' fifth cause of action asserts violations of Sections 2 and 3 of Article I of the California Constitution. Defendants assert that this claim should be dismissed because there is no private right of action under Sections 2 and 3.

Defendants are correct. California courts do not permit recovery of damages for a violation of Article I, Sections 2 and 3. *See Degrassi v. Cook*, 29 Cal. 4th 333, 342 (2002) (declining to recognize damages as an appropriate remedy to violations of Article I, Section 2(a)); *MHC Fin. Ltd. P'ship Two v. City of Santee*, 182 Cal. App. 4th 1169, 1184 (2010) ("A plaintiff may not, as a matter of law, recover damages for a violation of article I, section 3(a)."). Plaintiffs concede as much, and their cited case law regarding nominal damages, *see* Opp. 23–24, does not establish otherwise.[7]

### E. Associational Standing

Defendants' Motion next seeks to dismiss all claims brought by Plaintiff TPAM on the ground that it lacks standing and is an improper plaintiff. Motion at 17–19.

---

[6] Since the SAC adequately alleges Defendants did not act in good faith, the Court declines to rule on the issue of government immunities under Cal. Gov. Code §§ 815.2(b) (public entities), 820.6 (public employees) at this early stage of the action. *See Salazar v. Schwarzenegger*, No. 07-cv-1854-SJO-VBK, 2007 WL 9662364, at *6 (C.D. Cal. Oct. 23, 2007) (recognizing that immunity was not evident on the face of the pleadings and the plaintiffs were entitled to present evidence that the defendants did not act in good faith).

[7] Plaintiffs do not argue that the Court should recognize a private right of action for damages under *Katzenberg v. Regents of University of California*, 29 Cal.4th 300 (2002) (identifying the factors for determining whether to recognize a constitutional tort).

9

Under the doctrine of associational standing, an organization may sue on behalf of its members, regardless of whether the organization itself suffered an injury. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 342-44 (1977). To establish such standing, an entity mush show that "(1) at least one of its members would have standing to sue in his own right, (2) the interests the suit seeks to vindicate are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1105–6 (9th Cir. 2006). That standard is met here. In the Complaint filed by TPAM in the related case, TPAM alleges:

> TPAM represents ten (10) or more members in the Greater Los Angeles area including Heather Wilson and Amanda Lundberg. TPAM's members, individually and collectively, have suffered like injuries as described herein. This association is organized, in part, to promote free speech among its members and to use free speech to advocate on behalf of ponies. Claims brought and relief sought by TPAM can be litigated without the participation of TPAM's individual members.

Complaint, ¶10 [Dkt. No. 1], *These Ponies are Miserable v. Los Angeles Pony Rides, Inc.*, No. 2:21-cv-09653-HDV.[8] This allegation is sufficient to meet the three requirements for associational standing in *Fleck*.

### F. State Law Claims

Defendants further argue that Plaintiffs Rios, Hegger, Segal, and Sanders[9] did not adequately put the City on notice of their state law claims prior to filing this lawsuit. Motion at 19–21; *see also* SAC ¶ 3; RJN, Exhibits A, B. Under California's Tort Claims Act, a plaintiff must first present a claim against a public entity to that entity before she or he may file a lawsuit for monetary damages. Cal. Gov. Code § 905. This must generally occur within six months after the cause of action accrues or the claim may be barred. *Id.* § 911.2; *see Cnty. of San Luis Obispo v. Ranchita Cattle Co.*, 16 Cal. App. 3d 383, 390 (Ct. App. 1971). The claim must fairly reflect the underlying facts in order to give

---

[8] The Court also notes that one of TPAM's members, Amanda Lundberg, is an individual Plaintiff in this action as well.

[9] Plaintiffs concede that Sanders was not named in the claim filed on March 18, 2022, and is not entitled to recover damages for any alleged injuries related to the Free Speech Zone. Opp. at 27.

the entity sufficient notice to investigate and evaluate the claim. *Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 446–47 (2004). "Where the complaint merely elaborates or adds further detail to a claim, but is predicated on the same fundamental actions or failures to act by the defendants, courts have generally found the claim fairly reflects the facts pled in the complaint." *Id.*

Although Plaintiffs' claims filed in March 2022 and June 2023 referred to different incidents, they are predicated on the same fundamental actions by Defendants. Both claims concern L.A. Park Rangers' arrests or threats to arrest Plaintiffs for the same expressive activity in the same location. The Court cannot find that Plaintiffs' later claim presentation was based on an "entirely different set of facts" requiring the dismissal of Plaintiffs Rios, Hegger, and Segal's claims in this suit. *See Stockett*, 34 Cal. 4th at 447 ("A complaint's fuller exposition of the factual basis beyond that given in the claim is not fatal, so long as the complaint is not based on an entirely different set of facts.").

## V. CONCLUSION

Defendants' Motion to Dismiss is denied as to all claims except the fifth cause of action, which is dismissed with prejudice.

Dated: May 13, 2024

_____
Hernán D. Vera
United States District Judge