UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THESE PONIES ARE MISERABLE et al., | Case No. 2:23-cv-08330-HDV-SK |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [73]** |
| v. | |
| CITY OF LOS ANGELES et al., | |
| Defendants. | |

## I.   INTRODUCTION

This case arises out of a fifteen-month protest against the Pony Rides attraction at Griffith Park.  From September 2021 to December 2022, protestors staged actions seeking to convey their message that the Pony Rides' treatment of its ponies constituted animal abuse and to dissuade people from patronizing the attraction.  In July 2022, the City posted a sign setting forth rules regarding permissible conduct near the Pony Rides (the "July 2022 Rules") and warning that disobedience could result in arrest.  On numerous occasions, Park Rangers and Los Angeles Police Department ("LAPD") officers arrested protestors for violating the July 2022 Rules and for intentionally interfering with a business by obstruction or intimidation, in violation of California Penal Code section 602.1.

Eighteen Plaintiffs bring this action against the City of Los Angeles and individual officers (collectively "Defendants"), alleging that their arrests and the City's restrictions violated their First and Fourth Amendment rights as well as state law.  Second Amended Complaint ("SAC") [Dkt. No. 26].  Defendants now move for summary judgment ("Motion").  [Dkt. No. 73].  They contend that: (1) Plaintiffs' Fourth Amendment claims against the City and individual officers and Plaintiffs' state law claims are supported by probable cause; (2) that Plaintiffs' Fourth Amendment claims against individual officers are barred by qualified immunity; (3) Plaintiffs' state law claims are barred by the applicable statute of limitations and/or state statutory immunity; and (4) Plaintiffs' Ralph Act claim should be dismissed as there exists no genuine dispute of material fact that any Defendant acted violently or threatened violence towards any Plaintiff.

For the reasons discussed below, the Court *denies* Defendants' motion insofar as it is predicated solely on a lack of probable cause, preserving Plaintiffs' Fourth Amendment Claim against the City.  The motion is granted as to all other claims.

## II.   BACKGROUND

### A.   Factual Background

Around September 2021, Plaintiffs began a series of protest actions against the Pony Rides at Griffith Park, out of concern that the ponies were being abused, neglected, and mistreated.  The Pony Rides were operated by Los Angeles Pony Rides, Inc., which leased a 3.5-acre portion of Griffith

Park located at 4400 Crystal Springs Drive.  Joint Evidentiary Appendix ("EA") [Dkt. No. 73], Ex. D-51 (Declaration of Stefanie Smith ("Smith Decl.")) ¶¶ 6–7 [Dkt. No. 73-51].  The site consisted of a main riding ring, with a birthday party corral to its West.  *Id.* ¶ 6.  The ticket booth and entrance were positioned on the North side of the riding ring.  *Id.*



*Id.*  The diagram above illustrates the essential features of the Pony Rides.

In response to protestors, the City established a free speech zone in an area to the north of the ticket booth, just north of the furthest masonry planter.  EA, Ex. D-30 at 4 [Dkt. No. 73-30]. Plaintiffs contend that the free speech zone was too far away for them to be heard by the Pony Ride customers in line.  Joint Statement of Uncontroverted Material Facts ("UF") ¶ 105 [Dkt. No. 73]; *see, e.g.*, EA, Ex. P-4 (Declaration of Peter Lecki ("Lecki Decl.") ¶ 5 [Dkt. No. 73-68].[1]  The protestors also competed to be heard against the amplified sound used by the Pony Rides, the combustion engine of a nearby minitrain, and the ambient noise of park visitors and vehicular traffic. UF ¶ 81.

---

[1] Defendants' foundation objection is overruled.  Defendants' Evidentiary Objections 2 [Dkt. No. 73].  Because Lecki's statement "may be presented in an admissible form at trial, a court may still consider that evidence [on a motion for summary judgment]."  *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006)) (citing *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003)).

As detailed below, Plaintiffs were arrested on numerous occasions for intentional interference with a business by obstruction or intimidation, in violation of California Penal Code section 602.1.  One plaintiff, Peter Lecki, was also arrested for using amplified sound or signage in violation of Los Angeles Municipal Code sections 63.44 and 63.133, and for violating a court order.  UF ¶¶ 30–36, 113.

In December 2021, Plaintiffs filed a case seeking injunctive relief to protect their rights to protest ("Related Case").  *These Ponies are Miserable v. Los Angeles Pony Rides, Inc.*, No. 2:21-cv-9653 (C.D. Cal.).  On April 3, 2022, the City and Plaintiffs reached a "cease fire," in which the City would not enforce section 602.1 or constrain Plaintiffs to a free speech zone in exchange for Plaintiffs abandoning their claim to obtain a temporary restraining order.  UF ¶ 74.

In July 2022, the City enacted an ordinance that prohibited, among other things, amplified sound at the Pony Rides venue and signs larger than 8.5 inches by 11 inches within 15 feet of an active corral.[2]  UF ¶¶ 75.  Accordingly, the City posted signs informing protestors of the July 2022 ordinance and warning that failure to comply could result in arrest. UF ¶ 71; EA, Ex. D-49 at 5 [Dkt. No. 73-49].  The rules provided in relevant part:

Within 50 [feet] of any active corral . . .

3) No singing, chanting, shouting, or yelling at a volume that reaches a pony or person inside of any corral.
4) No amplified sound.
. . .
Within 15 [feet] of any active corral . . .
1) No display of signs, posters, pennants, or banners, whether handheld, affixed to stakes, sticks, frames, or not, that are larger than 8.5" x 11" in size.

Violation of these rules may be subject to citation and/or punishable as a misdemeanor. See Cal. Penal Code Section 602.1: LAMC Section 63.44.B.4.; LAMC Section 63.44.B.7.; and LAMC Section 63.133.

*Id.*

---

[2] The Court takes judicial notice of Exhibit A and Exhibit B.  *See* Fed. R. Evid. § 201; *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1026 n.1 (9th Cir. 2009) (finding it appropriate to take judicial notice of a local ordinance).  Defendants' Request for Judicial Notice 1 [Dkt. No. 73].  Both exhibits are sections of the Los Angeles Municipal Code, which are appropriate for judicial notice.

1     The City ultimately declined to prosecute any Plaintiff under section 602.1, except Lecki,

2  who plead *nolo contendere* to a violation of Penal Code section 415(2) for excessive noise.  UF ¶ 76.

3          **1.     Arrests for Violations of Section 602.**

4               **a.     October 3, 2021**

5     While the Pony Rides were temporarily shut down, Peter Lecki, Alondra Reveles, and Eric

6  Castro, along with other protestors, congregated near the entry of the line for the Pony Rides.  UF

7  ¶¶ 5–6, 39; EA, Ex. D-7 (Declaration of Felix Renteria ("Renteria Decl.") ¶ 7 [Dkt. No. 73-7];

8  Ex. D-20 [Dkt. No. 73-20].[3]  Sergeant Felix Renteria advised protestors that as the Pony Rides were

9  about to reopen, the protestors could not block the entrance and requested that they relocate to the

10  Free Speech Zone.  UF ¶ 7; EA, Ex. D-20.  Lecki responded, "I am not going anywhere."  UF ¶ 8.

11  Park Ranger David Ebner arrested Lecki for violating section 602.1.  *Id.* ¶ 9; EA, D-25 at 9:14 [Dkt.

12  No. 73-25]; EA, D-26 [Dkt. No. 73-26] (arrest documents for Peter Lecki).

13     Shortly after his arrest, Lecki joined a group of protestors, including Reveles and Castro, who

14  were standing a few feet away from the ticketing line.  UF ¶ 10; EA, Ex. D-23 at 1:40 [Dkt. No. 73-

15  23].  The protestors chanted messages like, "Ride the train, not the ponies."  UF ¶ 40; EA, Ex. D-21

16  [Dkt. No. 73-21]; *see* Lecki Decl. ¶ 4 (disputing that he intimidated the people in line); EA, Ex. P-5

17  (Declaration of Eric Castro ("Castro Decl.")) ¶ 4 [Dkt. No. 73-69) (same); EA, Ex. P-8 (Declaration

18  of Alondra Reveles ("Reveles Decl.")) ¶ 4 [Dkt. No. 73-72) (same).[4]  Lecki, Reveles, and Castro

19  each refused to leave after being requested to do so and were arrested.  UF ¶¶ 12, 42.

20               **b.     October 17, 2021**

21     On the heels of another temporary closure, a group of protestors, including Amanda

22  Lundberg, congregated within several feet of the Pony Rides entrance line, silently holding signs.

23  UF ¶¶ 50–51; EA, D-11 (Declaration of Daniel Brewster ("Brewster Decl.")) ¶ 5 [Dkt. No. 73-11];

24

25  ────────────

26  [3] Plaintiffs' objections to UF ¶ 5 and UF ¶ 39 (speculation and hearsay as to why the Pony Rides closed) is overruled as moot.  The Court does not rely on the cause of the Pony Rides closure.

27

28  [4] Defendants' foundation objections to Lecki, Castro, and Reveles' declarations are overruled for the reasons discussed *supra* note 1.  Defendants' Evidentiary Objections 1, 9–10, 20.

1    EA, Ex. D-27 [Dkt. No. 73-27].[5]  Though officers admonished Lundberg to leave the area, claiming

2    that she was scaring the ponies, she refused to leave.  UF ¶¶ 52–53; EA, Ex. D-27.  Two officers

3    proceeded to handcuff her and march her away.  *Id.*  After a few feet, Lundberg fell to her knees,

4    upon which time the officers dragged her by her upper arms.  *Id.*; EA, D-28 [Dkt. No. 73-28] (arrest

5    documents for Amanda Lundberg).

6                          **c.    October 23, 2021**

7            On October 23, 2021, Lecki stood immediately next to the entrance of the Pony Rides,

8    chanting at patrons, "You are abusing horses . . . you specifically."  Renteria Decl. ¶ 12; EA, Ex. D-8

9    (Declaration of Sean Kleckner ("Kleckner Decl.")) ¶ 5 [Dkt. No. 73-8]; EA, Ex. D-29 [Dkt. No. 73-

10   29].  Sergeant Renteria warned Lecki that his conduct would result in arrest, but Lecki again chanted

11   similar messages at patrons.  *Id.*  Officer Renteria and Park Ranger Sean Kleckner arrested Lecki.

12   UF ¶ 13; EA, Ex. D-30 [Dkt. No. 73-30] (arrest documents for Peter Lecki).

13           After this first arrest, Lecki returned to the Pony Rides, along with other protestors, this time

14   on the opposite side of the enclosure.  Renteria Decl. ¶ 14; EA, Ex. D-31 [Dkt. No. 73-31].  While

15   most of the protestors stood on the side of the path opposite from the entrance, Lecki stood right by

16   the entrance.  *Id.*  He mostly held his sign silently, occasionally addressing patrons with remarks like

17   "Do they look like happy animals to you?"  *Id.*  Sergeant Renteria again warned Lecki that their

18   signs risked scaring the horses and endangering the children, giving him one minute to leave the

19   premises.  Renteria Decl. ¶ 14.  Each of the protestors left, except for Lecki, who remained in front

20   of the entrance.  UF ¶ 17; EA, Ex. D-31.  He was arrested for the second time that day.  *Id.*; EA, D-

21   32 [Dkt. No. 73-32] (arrest documents for Peter Lecki).

22                          **d.    November 13, 2021**

23           On November 13, 2021, Renteria responded to patron complaints at the Pony Rides.

24   Renteria Decl. ¶ 17.[6]  Objective evidence shows that Rios was pacing around the entrance of the

---

[5] Plaintiffs' speculation objection is overruled for the reason discussed *supra* note 3.  UF ¶ 50.

[6] Plaintiff's objection (hearsay) is overruled.  UF ¶ 19.  At the summary judgment stage, the Court
focuses not on "the admissibility of the evidence's form," but on "the admissibility of its contents."

Pony Rides, chanting messages like, "Horses want to be free!" EA, Ex. D-36 [Dkt. No. 73-36].

Similarly, Lecki stood near the entrance, chanting similar messages. Renteria Decl. ¶¶ 19, 21;

Ex. D-36; EA, Ex. D-35 [Dkt. No. 73-35]. Rios engaged with patrons, responding "I don't see

what's funny about animal abuse." *Id.* Renteria reports receiving complaints from patrons about

both Rios and Lecki. Renteria Decl. ¶¶ 17, 20.[7] When Rios and Lecki refused to leave, both were

arrested for violating section 602.1. UF ¶¶ 20, 47; Renteria Decl. ¶¶ 17–19, 21; EA, Ex. D-33 [Dkt.

No. 73-33] (arrest documents for Maria Rios); EA, Ex. D-37 [Dkt. No. 73-37] (arrest documents for

Peter Lecki).

### e.  December 19, 2021

On December 19, 2021, the protestors, including Lecki, congregated by a party corral,

shouting messages at the patrons attending a private birthday party. UF ¶ 21; EA, Ex. D-9

(Declaration of Patrick Joyce ("Joyce Decl.")) ¶ 5 [Dkt. No. 73-9]; EA, Ex. D-38 [Dkt. No. 73-38].

After some time, patrons approached the protestors, accusing them of scaring the children. *Id.* Park

Ranger Patrick Joyce averred that Lecki's behavior was "escalating tensions to the point that a fight

could potentially break out" and asked him to leave. Joyce Decl. ¶ 5 [Dkt. No. 73-9]; EA, Ex. D-38.

When he did not, Joyce instructed the Park Rangers to arrest Lecki for violating Penal Code section

602.1(a). UF ¶ 23; Joyce Decl. ¶¶ 5–6; EA, Ex. D-39 [Dkt. No. 73-39] (arrest documents for Peter

Lecki).

### f.  February 27, 2022

On February 27, 2022, Renteria responded to a report of an altercation at the Pony Rides.

Renteria Decl. ¶¶ 23–27.[8] A woman alleged that protestors had been harassing her and her five-

year-old grandson, causing the child to become so frightened that he hit his nose. *Id.*; EA, Ex. D-40

---

*Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021) (quoting *Fraser*, 342 F.3d at
1036). Because patrons' complaints about Rios can be adduced in a form that would be admissible
at trial—like through the testimony of the patrons themselves, the Court is not precluded from
considering them on summary judgment.

[7] Plaintiffs' hearsay objection is overruled for the reasons discussed in note 6. UF ¶¶ 24, 48.

[8] Plaintiffs' hearsay objections are overruled for the reasons discussed in note 6. UF ¶¶ 24, 48.

at 3 [Dkt. No. 73-40] (arrest documents for Peter Lecki).  However, objective evidence does not

show this altercation.  EA, Ex. D-41 [Dkt. No. 73-40].  A video produced by Plaintiffs shows that

Lecki was standing a few feet back from the line into the Pony Rides while Michael Hegger was

standing approximately fifteen feet from the queuing patrons.  *Id.* at 14:30.  Renteria notified the

protestors that he had received a complaint that they were intimidating and harassing patrons.

Renteria Decl. ¶ 24.  Lecki and Hegger were arrested after they refused to leave.  UF ¶¶ 25, 49;

Renteria Decl. ¶¶ 24–27.

### g.    March 26, 2022

On March 26, 2022, a Pony Ride patron complained about Lecki yelling at children attending

a child's birthday party from approximately six feet away.  EA, Ex. D-10 (Declaration of David

Ebner ("Ebner Decl.")) ¶¶ 15–16 [Dkt. No. 73-10] (averring that he personally observed Lecki

shouting at attendees); EA, Ex. D-43 at 5 [Dkt. No. 73-43] (relaying report from patron).[9]  However,

this incident was not captured by video evidence.  EA, Ex. D-42 [Dkt. No. 73-42] (showing Lecki

silently holding a sign next to the birthday corral).  After refusing to leave, Lecki was arrested.  UF

¶ 27; Ex. D-43 (arrest documents for Peter Lecki).

### h.    April 2, 2022

On April 2, 2022, two patrons who were renting a corral for a birthday party complained

about Lecki and Castro shouting at the children and parents.  Ebner Decl. ¶ 21.[10]  Initially, Lecki

agreed to move approximately 30 yards away.  *Id.* ¶ 22.  But half an hour later, Ebner observed

Castro and Lecki shouting at the group of patrons.  *Id.* ¶ 23.  After they refused to leave, Ebner

arrested Lecki and Castro for violations of section 602.1.  UF ¶¶ 29, 44; Ebner Decl. ¶¶ 23–24; EA,

Ex. D-44 [Dkt. No. 73-44] (arrest documents for Peter Lecki and Eric Castro).

### 2.    Arrests for Violations of Los Angeles Municipal Code Section 63.44

Lecki was detained on May 21, June 4, and June 11, 2022 for using amplified sound in

violation of section 63.44.  *See* LAMC § 63.44(B)(4) ("No person shall play or utilize any sound

---

[9] Plaintiffs' hearsay objection is overruled for the reasons discussed in note 6.  UF ¶ 26.

[10] Plaintiffs' hearsay objections are overruled for the reasons discussed in note 6.  UF ¶¶ 28, 43.

amplifying system except within or upon an area or facility set aside for such purpose by the Board, Department or Commission."); UF ¶ 30 (undisputed that Lecki used a bullhorn on May 21); *id.* ¶ 31 (undisputed that Lecki used a bullhorn on June 4); *id.* ¶ 33 (undisputed that a video shows Lecki using amplified sound on June 11).[11] Lecki contends that on each of these occasions, he used amplified sound to be heard in the noisy Pony Ride venue environment.  Lecki Decl. ¶ 5 [Dkt. No. 73-68].[12]

### 3.    Arrests for Violations of Los Angeles Municipal Code Section 63.133

Lecki was also arrested on August 13 and August 27, 2022 for holding a sign larger than 8.5 by 11 inches, in violation of a posted rule and section 63.133.  LAMC § 63.133(a) (prohibiting violating a posted rule in a park); UF ¶ 34 (undisputed that on the relevant occasions, there was a posted rule prohibiting holding signs larger than 8.5 by 11 inches within 15 feet of an active corral); *id.* ¶¶ 35–36 (undisputed that Lecki used an oversized sign within 15 feet of an active corral on August 13 and August 27, 2022).

### 4.    Arrests for Violations of Court Order

On September 25, 2022, Lecki was arrested for violating a court order prohibiting him from being within ten yards of 4400 Crystal Springs Drive, in violation of California Penal Code section 166(a)(4).  UF ¶ 37 (disputed who arrested Lecki).  Lecki testified that he was standing at 3900 Crystal Springs Drive, which he believed was at least fifty feet away from 4400 Crystal Springs

---

[11] The parties dispute whether Lecki's detention on June 11, 2021 constituted an arrest, or merely an administrative citation.  UF ¶ 32.  For the purposes of this motion, the Court will presume that it constituted an arrest.

[12] Defendants' objections to Lecki's statement (lack of foundation and relevance) are overruled. Defendants' Evidentiary Objections at 2. As an initial matter, "objections for relevance are generally unnecessary on summary judgment because they are 'duplicative of the summary judgment standard itself.'" *Sandoval*, 985 F.3d at 665 (quoting *Burch*, 433 F. Supp. 2d at 1119).  Lecki's testimony about his ability to convey his message are relevant to whether the City's restrictions were reasonable time, place, and manner restrictions.  Moreover, even if Lecki's testimony lacks foundation, because "it may be presented in an admissible form at trial, a court may still consider that evidence [on a motion for summary judgment]."  *Burch*, 433 F. Supp. 2d at 1120 (citing *Fraser*, 342 F.3d at 1037).

1  Drive, based on his own measurement.  *Id.* ¶ 110; Lecki Decl. ¶ 19.[13]  Sergeant Renteria observed

2  Lecki standing in front of the snack stand, which he avers was less than ten yards from 4400 Crystal

3  Springs Drive.  Renteria Decl. ¶ 29.

4      **B.**    **Procedural Background**

5      In December 2021, Plaintiffs initiated an action, *These Ponies are Miserable v. Los Angeles*

6  *Pony Rides, Inc.*, No. 2:21-cv-9653 (C.D. Cal.), seeking injunctive relief to protect their rights to

7  protest ("Related Case").  The parties ultimately reached a settlement in the Related Case, which did

8  not preclude future damages claims.  *See id.*, Dkt. No. 42.

9      Meanwhile, Plaintiffs (with the exception of Jamie Sanders) presented a government claim

10  with the City on March 18, 2022, seeking damages for arrest, harassment, and interference of

11  Plaintiffs' protect activities from October 10, 2021 "and almost every weekend thereafter through

12  the present day" ("Claim 1").  UF ¶ 1; EA, Ex. D-1 (Declaration of Brian Sam ("Sam Decl.")) ¶ 4

13  [Dkt. No. 73-1]; EA, Ex. D-2 at 3 [Dkt. No. 73-2].  The City denied the claim on April 7, but

14  Plaintiffs' counsel avers that he never received the denial letter.  UF ¶ 2; Sam Decl. ¶ 6; EA, Ex. D-4

15  [Dkt. No. 73-4]; EA, Ex. D-6 (Declaration of Rosa Lau) ¶ 3 [Dkt. No. 73-6]; UF ¶ 68; EA, Ex. P-1

16  (Declaration of Jerold D. Friedman ("Friedman Decl.")) ¶ 2 [Dkt. No. 73-65].[14]

17      Plaintiffs presented a second government claim with the City on June 9, 2023, seeking

18  redress for incidents between July 7, 2022 and December 10, 2022 ("Claim 2").  UF ¶ 4; Sam Decl.

19  ¶ 7; EA, Ex. D-5 at 3–4 [Dkt. No. 73-5].  Plaintiffs alleged, in part, that the posted July 2022 rules

20  unlawfully interfered with Plaintiffs' free speech rights.  *Id.*

21      Plaintiffs initiated the instant action on October 3, 2023.  [Dkt. No. 1].  Following

22  amendments, Plaintiffs now allege: (1) that the City is liable under U.S. Code, title 42, section 1983

23

24  _____

25  [13] Defendants' objection (lack of foundation) is overruled for the reasons discussed in note 1. Defendants' Evidentiary Objections at 6–7.

26  [14] Plaintiffs' counsel also avers that the City Attorney's August 22, 2022 email in relation to the

27  settlement of the Related Case expressed concerns about lack of compliance with the Government Claims Act, implying that no denial letter had been emailed.  Friedman Decl. ¶ 3, Ex. P-2 [Dkt.

28  No. 73-66].

for maintaining polices and customs that violate the First Amendment; (2) that the City is liable under Section 1983 for maintaining polices and customs that violate the Fourth Amendment; (3) that the individual Defendants are liable under Section 1983 for violating Plaintiffs' First Amendment rights; (4) that the arresting individual Defendants are liable under Section 1983 for violating the arrested Plaintiffs' Fourth Amendment right to be free from unreasonable seizures and excessive force; (5) that Defendants violated Plaintiffs' rights under Article I of the California Constitution; (6) that Defendants violated the Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1; and (7) that Defendants violated the Ralph Act, Cal. Civ. Code § 51.7; (8) that the arresting and supervisory Defendants battered and falsely arrested the arrested Plaintiffs; and (9) that Defendants are liable for negligence. SAC ¶¶ 192–282.

Defendants moved to dismiss on February 26, 2024. [Dkt. Nos. 41, 47]. The Court granted Defendants' motion as to Plaintiff's claim under the California Constitution concluding that California courts do not permit recovery of damages for violations of Article I, sections 2 and 3. Order re Defendants' Motion to Dismiss ("MTD Order") 9 [Dkt. No. 49]. However, the Court denied the motion as to all other claims, finding that it could not conclude that qualified immunity was applicable, that Plaintiffs plausibly alleged that they were arrested without probable cause, and Plaintiffs' government claims adequately put the City on notice of their claims. *Id.* at 7–9, 10–11.

On March 27, 2025, Defendants moved for partial summary judgment. Defendants contend: (1) that they are entitled to summary judgment on Plaintiffs' Fourth Amendment claims against the City and individual officers and Plaintiffs' state law claims as their arrests were supported by probable cause; (2) that Plaintiffs' Fourth Amendment claims against the individual officers are barred by qualified immunity; (3) that Plaintiffs' state claims are barred by the applicable statute of limitations and/or state statutory immunity; and (4) that they are entitled to summary judgment on Plaintiffs' Ralph Act claim because there was no genuine dispute of material fact that any Defendant acted violently or threatened violence towards any Plaintiff. Notice of Motion at 1–2. The Court heard oral argument on the matter on May 8, 2025 and took the under submission. [Dkt. No. 79].

1    **III.    LEGAL STANDARD**

2        Summary judgment should be granted "if the movant shows that there is no genuine dispute

3    as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

4    56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Material facts

5    are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v.*

6    *Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

7    248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a

8    verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

9        The moving party bears the initial burden of establishing the absence of a genuine dispute of

10    material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To carry its burden of production,

11    the moving party must either: (1) produce evidence negating an essential element of the nonmoving

12    party's claim or defense; or (2) show that there is an absence of evidence to support the nonmoving

13    party's case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

14    Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go

15    beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to

16    interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine

17    issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c), (e)); *see also*

18    *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) ("Rule 56 requires the parties to set

19    out facts they will be able to prove at trial."). "In judging evidence at the summary judgment stage,

20    the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v.*

21    *Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "Rather, it draws all inferences in the light

22    most favorable to the nonmoving party." *Id.*

23    **IV.    DISCUSSION**

24        **A.    Probable Cause**

25        As an initial matter, Defendants contend that each arrest was supported by probable cause.

26    Motion at 9–16. "Probable cause exists when police have knowledge at the moment of arrest of

27    facts and circumstances based on reasonably trustworthy information that would warrant a belief by

28    a reasonably prudent person that the person arrested has committed a criminal offense." *Franklin v.*

*Fox*, 312 F. 3d 423, 438 (9th Cir. 2002).  Addressing each type of offense separately, the Court finds genuine disputes of material fact exist as to each arrest, with the exception of Lecki's arrest for violating his court order.

### 1.    California Penal Code section 602.1

A violation of section 602.1 requires two elements: (1) intentional interference with a lawful business or occupation, and (2) refusal to leave.  *Dubner v. City and Cnty. of S.F.*, 266 F.3d 959, 966 (9th Cir. 2001) (quoting Cal. Penal Code § 602.1).[15]

An individual intentionally interferes with a business by "obstructing or intimidating those attempting to carry on business, or their customers[.]"  Cal. Penal Code § 602.1(b).  The undisputed facts do not establish that Plaintiffs ever physically obstructed the entrance to the Pony Rides.  *See, e.g.*, EA, Ex. D-21 (October 3, 2021) (showing protestors congregating near the entrance, but not blocking it).  *See Lorenz v. Cnty. of San Bernardino*, No. CV-22-0143-PA-JPRX, 2022 WL 18228299, at *6 (C.D. Cal. Dec. 6, 2022), *aff'd*, No. 23-55014, 2024 WL 2931420 (9th Cir. June 11, 2024) (finding probable cause where protestors "blocked the entrance to the Justice Center"). [16]

In the absence of physical obstruction, Defendants argue that Plaintiffs were intimidating the patrons by "shouting" at them.  *See* Motion at 12–13.  Plaintiffs aver that they "limited their volume to what was needed" to convey their message in a noisy environment.  Plaintiffs' Opposition to Defendants' Motion ("Opposition") 13 [Dkt. No. 73].  *See* UF ¶ 81 (undisputed that the Pony Rides business uses amplified sound to play music and announcements).  Though loud chanting may

---

[15] Plaintiffs correctly note that section 602.1 is constrained by the state and federal constitution. Penal Code § 602.1(d)(2) ("This section shall not apply to . . . [a]ny person on the premises who is engaging in activities protected by the California Constitution or the United States Constitution."); *Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 793 n.11 (9th Cir. 2008) (noting that section 602.1(d)(2) "limit[s] the statute to what is constitutionally permissible"). Because the Court finds genuine disputes of material fact as to probable cause on other grounds, the Court declines to decide whether the City imposed reasonable time, place, and manner restrictions in applying section 602.1.

[16] Defendants also argue that Plaintiffs obstructed the Pony Rides operations by scaring the ponies. *See* Motion at 12, 16.  But given the loud atmosphere at the Pony Rides premises, *see* SUF ¶ 81, the Court does not find it plausible that Plaintiffs' protests—even at their loudest—presented any danger to the ponies or their riders.

13

constitute interference in a library, it may not in a crowded, festive outdoor setting. *See Lowery v.
City of Los Angeles*, No. CV 18-9644-R (JPR), 2018 WL 6680569, at *7 (C.D. Cal. Dec. 19, 2018)
(finding probable cause under section 602.1 where the plaintiff was "ruminati[ng]" "audibl[y]" in a
public library); *Lorenz*, 2022 WL 18228299 at *6 (finding probable cause where Plaintiffs
"disrupted the court's ability to transact its business by chanting loudly").

The Court finds genuine disputes of material fact as to whether Defendants had probable
cause to arrest Plaintiffs for intimidation in violation of section 602.1 on the occasions in which
Plaintiffs chanted in proximity to Pony Rides patrons waiting in line. These include: Lecki, Reveles,
and Castro's arrests on October 3, 2021; Lundberg's arrest on October 17, 2021; Lecki's arrests on
October 23, 2021; and Rios' and Lecki's arrests on November 13, 2021. On each occasion, the
protestors conveyed their message—however loudly—to those in line. The undisputed evidence
does not establish that, on these instances, the arrested Plaintiffs prevented any patron from
accessing the Pony Rides or startled the horses such that the Pony Rides were unable to transact their
business. *See also Dubner*, 266 F.3d at 966 (rejecting the "argument that intent to interfere [could]
be inferred from . . . refusal to leave").

Neither are the patrons' reports dispositive. Even where police were informed about an
allegedly obstructing or intimidating individual, they remained obliged to determine for themselves
whether probable cause was present. *See Mackey v. Meyer*, 675 F. App'x 705, 708 (9th Cir. 2017)
(holding that the officer lacked probable cause where he was informed by dispatch that the plaintiff
was "harassing" DMV customers, but upon arrival "encountered Mackey reading his bible aloud in a
dirt patch, neither obstructing nor intimidating anyone in line"). On February 27, 2022, Renteria
recounts responding to an altercation where protestors allegedly harassed a woman and her five-
year-old grandson, causing injury to the grandson. Renteria Decl. ¶¶ 23–27; EA, Ex. D-40 at 3. But
objective evidence shows only that Lecki and Hegger were standing several feet from the patrons in
line, loudly yelling messages. EA, Ex. D-41. This—without more—cannot support probable cause
for a violation of section 602.1.

The instances in which Plaintiffs clashed with a captive audience at the birthday corral pose a
closer question. For example, with respect to Lecki's December 19, 2021 arrest, Ranger Joyce

attributes escalating tensions between the patrons and the protestors to Lecki's behavior.  Joyce
Decl. ¶ 5.  For his part, Lecki avers that he "spoke in his usual loud voice that [he] believed was
reasonably necessary considering the ambient noise and distance to the customers."  Lecki Decl.
¶ 14.  *See* EA, Ex. D-38 (showing Lecki and others loudly conveying their message in a loud
environment, leading patrons to engage the protestors in a heated discussion).  Similarly, Ranger
Ebner testifies that he observed Lecki shouting at birthday party attendees on March 26, 2022, but
Lecki denies speaking any louder than necessary to be heard.  Ebner Decl. ¶¶ 15–16; Lecki Decl.
¶ 15.  Ranger Ebner also claimed to observe Castro and Lecki shouting at patrons on April 2, 2022,
which they dispute.  Ebner Decl. ¶ 23; Lecki Decl. ¶ 16; Castro Decl. ¶ 9.[17]  On balance, the Court
finds genuine disputes of material fact as to whether Plaintiffs loudly conveying their message—
without more—constitutes intentional interference in violation of section 602.1.

## 2.     Los Angeles Municipal Code section 63.44 and 63.133

The parties do not dispute that Lecki used amplified sound in violation of section 63.44 and
oversized signage in violation of section 63.133.  UF ¶ 30 (undisputed that Lecki used a bullhorn on
May 21); *id.* ¶ 31 (undisputed that Lecki used a bullhorn on June 4); *id.* ¶¶ 32–33 (undisputed that a
video shows Lecki using amplified sound on June 11); *id.* ¶ 34 (undisputed that on the relevant
occasions, there was a posted rule prohibiting holding signs larger than 8.5 by 11 inches).  Rather,
Plaintiffs contend that sections 63.44 and 63.133 are unconstitutional on their face.  Opposition at
19–22.

The First Amendment protects the use of sound amplification devices as "indispensable
instruments" of speech.  *Cuviello v. City of Vallejo*, 944 F.3d 816, 825 (9th Cir. 2019) (quoting
*Saia v. People of State of New York*, 334 U.S. 558, 561 (1948)).  For a regulation on sound
amplification to comport with the First Amendment, it must be (1) justified without reference to the
content of the regulated speech, (2) narrowly tailored to serve a significant governmental interest,
and (3) leave open ample alternative channels for communication of the information.  *Ward v. Rock*

---

[17] Defendants' objection (lack of foundation) is overruled for the reasons discussed *supra*, in note 1.
Defendants' Evidentiary Objection at 5.

1    *Against Racism*, 491 U.S. 781, 791 (1989) (citation omitted).  A restriction is narrowly tailored if it

2    does not "burden substantially more speech than is necessary" to achieve a substantial government

3    interest.  *Id.* at 799.  "The failure to satisfy any single prong of this test invalidates the requirement."

4    *Grossman v. City of Portland*, 33 F.3d 1200, 1205 (9th Cir. 1994).  The City has the burden of

5    justifying a restriction on speech.  *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir.

6    2009).

7          Los Angeles Municipal Code section 63.44(B)(4) bans "any sound amplifying system except

8    within or upon an area or facility set aside for such purpose by the Board, Department or

9    Commission."[18]  Similarly, the posted July 2022 Rules prohibit amplified sound of any kind and any

10   "singing, chanting, shouting, or yelling at a volume that reaches a pony or person inside of any

11   corral."  EA, Ex. D-49 at 5.  Neither the ordinance nor the July 2022 Rules reference the content of

12   the regulated speech.  Here, the restriction is justified without reference to content.  *Id.* (creating a

13   "safety zone").

14         However, the Court finds that the City's wholesale restriction on amplified sound was not

15   narrowly tailored to achieve its interest in regulating noise levels.  The restriction "targets only one

16   aspect of the problem"—that is, amplified sound—without targeting other sources of noise, like the

17   "combustion engine of a minitrain, park visitors, . . . and vehicular traffic."  *Dowd v. City of Los*

18   *Angeles*, No. CV-09-06731 DDP SSX, 2013 WL 4039043, at *11 (C.D. Cal. Aug. 7, 2013); UF ¶ 81.

19   The City could have achieved its legitimate interest in protecting ponies and patrons alike from

20   excess noise by instituting a volume limit applying to all sources of noise.  *Dowd*, 2013 WL

21   4039043, at *11 ("The obvious less restrictive alternative to the absolute amplified sound ban is a

22   decibel limit that would apply to all users . . . .");  *Rosenbaum v. City & Cnty. of San Francisco*, 484

23   F.3d 1142, 1160 (9th Cir. 2007) (approving a permit requirement for "unreasonably loud [and]

24   raucous" amplified speech that can be heard from 250 feet away or that "disturb[s] the peace, quiet

25   and comfort of persons in the neighborhood").  But it did not do so.  To the contrary, the undisputed

26

27   [18] Section 63.44(B)(4) exempts "the regular and customary use of portable radios, televisions, record
     players or tape recorders played or operated in such places and at such times so as not to disturb
28   other persons in their permitted uses of the park."

1  record shows that the City turned a blind eye to the Pony Rides' own use of amplified sound at the

2  same location.  UF ¶ 81.

3      Moreover, by its very terms, the posted July 2022 Rules fail to leave open alternate channels

4  of communication.  By prohibiting sound (amplified or not) that merely "*reaches* a pony or person

5  inside of any corral," the City effectively prohibits protestors from making their views heard.  EA,

6  Ex. D-49 at 5 (emphasis added).

7      The City's justification for its signage restriction is even thinner.  The July 2022 Rules

8  prohibit "signs, posters, pennants, or banners, whether handheld, affixed to stakes, sticks, frames, or

9  not, that are larger than 8.5" x 11" in size" within fifteen (15) feet of any active corral.  Ex. D-49 at

10  5.  While the City has an interest in preventing the ponies from reacting negatively to visual

11  disturbances, Defendants fail to satisfy their burden of establishing that this prohibition was

12  narrowly tailored to protect the ponies (or their riders).  Moreover, the signage restriction

13  substantially burdens "an important communicative aspect of public protest."  *Edwards v. City of*

14  *Coeur d'Alene*, 262 F.3d 856, 865 (9th Cir. 2001).  Limiting signs to the size of an ordinary sheet of

15  letter paper drastically reduces the number of passerby who are able to see the protestors' message.

16  *Cf. Foti v. City of Menlo Park*, 146 F.3d 629, 634, 641 (9th Cir. 1998), *as amended on denial of*

17  *reh'g* (July 29, 1998) (finding that a restriction that signage be no larger than three square feet only

18  burdens speech "in a minimal way" because both pedestrians and drivers could still "see their

19  protest . . . and understand their message").  Moreover, the restriction—especially in combination

20  with the ban on amplified sound—left protestors with few alternative channels through which to

21  communicate their message.

22      At the very least, Plaintiffs have established a genuine dispute of material fact as to whether

23  sections 63.44(B)(4) and 63.133(a) and the July 2022 Rules were narrowly tailored to achieve

24  legitimate government interests or preserved alternative channels of communication.  Consequently,

25  the Court cannot conclude that probable cause was present for Lecki's arrest under those sections.[19]

26  ─────────────

27  [19] Plaintiffs also argue that the City unevenly enforced sections 63.44(B)(4) and 63.133(a).
   Opposition at 20 (noting that the City permitted the Pony Rides to use amplified sound, while it

28  enforced the ordinance against Plaintiffs); *id.* at 20–21 (noting that the City permitted Pony Ride

3.      **Violation of Court Order**

Notwithstanding the findings above, the Court concludes that Sergeant Renteria did have

probable cause to arrest Lecki September 25, 2022 in violation of his court order.  The parties

dispute the boundaries of 4400 Crystal Springs Drive.  *See* UF ¶ 110; Lecki Decl. ¶ 19 (averring that

Lecki was standing 50 feet from the *building* at 4400 Crystal Springs Drive); *id.* ¶ 111 (Plaintiffs

averring that the Pony Rides building nearest to Lecki was the pergola); *id.* (Defendants averring that

the map shows the confines of 4400 Crystal Springs Drive).  While the parties appear to dispute

whether the distance specified by Lecki's court order should be measured from the *building* at 4400

Crystal Springs Drive or from the edge of the property, the Court need not decide the issue.  Even if

Plaintiffs' interpretation is correct, probable cause can rest on reasonable but mistaken

understandings of fact.  *Heien v. North Carolina*, 574 U.S. 54, 61 (2014).

B.      **Qualified Immunity**

Defendants next contend that Plaintiffs' Fourth Amendment claims against individual

officers should be dismissed on qualified immunity grounds.  Motion at 17.  The Court agrees.

An individual government defendant is entitled to qualified immunity from suit for civil

damages "insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982).  Qualified immunity shields an official even if the conduct resulted from "a mistake of law, a

mistake of fact, or a mistake based on mixed questions of law and fact."  *Pearson v. Callahan*, 555

U.S. 223, 231 (2009) (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

The doctrine protects "all but the plainly incompetent or those who knowingly violate the law. . . . if

officers of reasonable competence could disagree on th[e] issue [of whether a chosen course of

---

customers to display signs larger than 8.5" by 11").  Lecki Decl. ¶ 18 (averring that he "frequently
saw signs posed in violations of the July 2022 Rules" by the Pony Rides business and its customers);
EA, Ex. P-15 (Declaration of Aouie Goodnis) ¶¶ 2–3 [Dkt. No. 73-79] (averring that an oversized
banner was hung by Pony Rides customers on August 27, 2022) ; EA, Ex. P-14 [Dkt. No. 73-78]
(showing a banner larger than 8.5 by 11 inches apparently posted by Pony Rides patrons).
(Defendant's objections to the relevant portions of the Lecki and Goodnis declarations are overruled
for the reasons discussed in note 1.)  The Court finds that genuine disputes of material fact remain as
to the City's enforcement of these ordinances.

1    action is constitutional], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341

2    (1986).

3         The Ninth Circuit applies a two-pronged inquiry to resolve claims of qualified immunity.

4    First, the court determines whether the officer's conduct violated a constitutional right. *Robinson v.*

5    *York*, 566 F.3d 817, 821 (9th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). While

6    an officer's actions are not judged "with the 20/20 vision of hindsight," the court must ask "whether

7    a reasonable officer would have or *should* have accurately perceived that fact." *Torres v. City of*

8    *Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011) (citations omitted) (emphasis in original). Second, the

9    court must determine whether the constitutional right at issue was "clearly established in light of the

10   specific context of the case" at the time of the events in question. *Mattos v. Agarano*, 661 F.3d 433,

11   440 (9th Cir. 2011) (en banc) (quoting *Robinson*, 566 F.3d at 821). Conduct violates a "clearly

12   established" right when "existing precedent [places] the statutory or constitutional question beyond

13   debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The plaintiff bears the burden of showing

14   that the right at issue was clearly established. *Clairmont v. Sound Mental Health*, 632 F.3d 1091,

15   1109 (9th Cir. 2011).

16        Courts "exercise their sound discretion in deciding which of the two prongs of the qualified

17   immunity analysis should be addressed first in light of the circumstances in the particular case at

18   hand." *Pearson*, 555 U.S. at 236. "[W]hether a constitutional right was violated . . . is a question of

19   fact," but the "clearly established" inquiry "is solely a question of law for the judge." *Tortu v. Las*

20   *Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009).

21        In their effort to show that their arrests under section 602.1 were unconstitutional under

22   clearly established law, Plaintiffs identify only an unpublished district court case. Opposition at 23

23   (citing *Hall v. City of Fairfield*, No. 2:10-cv-0508, 2014 WL 1303612 (E.D. Cal. Mar. 31, 2014)).

24   *See Lorenz v. Cnty. of San Bernardino*, No. 23-55014, 2024 WL 2931420, at *2 (9th Cir. June 11,

25   2024) (finding that "[*Hall*] alone is insufficient to show that the law was clearly established at the

26   time of the conduct in question"); *Rico v. Ducart*, 980 F.3d 1292, 1300–01 (9th Cir. 2020) ("While

27   unpublished decisions of district courts may inform our qualified immunity analysis[,] it will be a

28   rare instance in which, absent any published opinions on point or overwhelming obviousness of

1  illegality, we can conclude that the law was clearly established on the basis of unpublished decisions

2  only.").  This does not suffice to satisfy Plaintiffs' burden.

3       Plaintiffs face an even steeper hill with respect to the arrests for violations of municipal

4  ordinances.  "[A]n officer who unlawfully enforces an ordinance in a particularly egregious manner,

5  or in a manner which a reasonable officer would recognize exceeds the bounds of the ordinance, will

6  not be entitled to immunity even if there is no clear case law declaring the ordinance or the officer's

7  particular conduct unconstitutional."  *Grossman*, 33 F.3d at 1210.  Though Plaintiffs *have*

8  established genuine disputes of material fact as to whether sections 63.44 and 63.133 were

9  permissible time, place, and manner restrictions, they have not established that officers enforced

10 these ordinances in a manner that patently exceeds the bounds of the ordinances.  Insofar as the

11 ordinances were unconstitutional, the record suggests that Defendant officers permissibly "rel[ied]

12 on the city council's judgment that it was lawful[.]"[20]  *Id.* at 1210.  This is precisely the type of

13 situation qualified immunity is intended to address.  Qualified immunity applies.

14     **C.    State Law Claims**

15       Finally, Defendants contend that Plaintiffs' state claims are barred by the applicable statutes

16 of limitations or by state governmental immunity statutes.  Motion at 6–8.

17          **1.    Claim 1**

18       Defendants argue that Plaintiffs' state law claims arising from Claim 1 are time-barred as

19 Plaintiffs failed to file suit within the allotted period after denial of their government claim.  Motion

20 at 7–8.

21       Under California's Government Claims Act, no person may sue a public entity or employee

22 for "money or damages" unless a timely written claim has been presented to and acted upon by the

23 public entity.  Cal. Gov. Code § 945.4.  To satisfy this requirement, claimants must present a

24 personal injury claim to the government entity within six months of the accrual of the cause action.

25 *Id.* § 911.2.  If the government entity rejects the claim in writing, the claimant must file suit within

26

27  _____

28  [20] Because the Court finds that probable cause supports Lecki's arrest for violation of his court order,
    the Court does not proceed to the qualified immunity analysis for that arrest.  *See supra* Part IV.A.3.

1   six months of the date that the notice of rejection is deposited in the mail.  *Id.* § 945.6(a)(1).  If,

2   however, the government entity does not provide written notice rejecting the claim, the claimant may

3   file suit within two years of the accrual of the cause of action.  *Id.* § 945.6(a)(2).

4          Plaintiffs filed their first claim on March 18, 2022.  UF ¶ 1.  The City mailed a denial of that

5   claim on April 7, 2022, giving Plaintiffs until October 7, 2022 to file the instant action.  UF ¶ 2; Sam

6   Decl. ¶ 6; EA, Ex. D-4.  Plaintiffs aver that they never received the denial and that the City

7   Attorney's statements during the settlement of the Related Case led them to believe that their claim

8   had not been denied.  UF ¶ 68; *see supra* note 11.  But on this matter, the law is clear: A claimant's

9   ignorance of the denial does not toll the statute of limitations.  Because the claimant bears the

10  obligation "to inquire as to the status of the claim if he or she has not received a written rejection

11  notice within a reasonable time," "the six-month limitations period within which to file suit applies

12  *regardless of whether notice is actually received*."  *Cnty. of Los Angeles v. Superior Ct.*, 127 Cal.

13  App. 4th 1263, 1268 (2005).  Consequently, Plaintiffs' state law claims arising from the incidents

14  from October 10, 2021 to March 18, 2022 are time-barred.[21]  Similarly, because Claim 1

15  encompasses Lundberg's October 17, 2021 arrest, Plaintiffs' Ralph Act claim as to Lundberg is

16  barred.  *See* Opposition at 21–22.

17

18

19  _____

20  [21] Neither can the language in the agreed upon dismissal order in the Related Case free Plaintiffs

21  from their obligations under the Government Claims Act.  Opposition at 2–3 (". . . [N]othing in this Settlement Agreement releases, limits, or otherwise in any way precludes any damages claims made

22  by any Plaintiff" in this case).  This language merely provides that Plaintiffs have not relinquished their right to pursue the instant claims, not that the City has waived any defenses to them.

23

24  Similarly, Plaintiffs cannot establish that equitable tolling should apply to their claims.  Opposition at 4–5.  Equitable tolling is "designed to prevent unjust and technical forfeitures of the right to a trial

25  on the merits when the purpose of the statute of limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied."  *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th

26  88, 99 (2008) (quoting *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal. App. 3d 1, 38 (1989)).  But only one Plaintiff was a party to the related case, and Plaintiffs cite no case "that would

27  allow a plaintiff in one case to equitably toll the limitation period based on the filing of a stranger's lawsuit."  *Reid v. City of San Diego*, 24 Cal. App. 5th 343, 361, *as modified on denial of reh'g* (June

28  20, 2018).

2.    **Claim 2**

a.    <u>**Statute of Limitations**</u>

Defendants contend that Plaintiffs failed to timely present Claim 2 at all.  Motion at 8 (citing Cal. Gov. Code § 911.2).  Plaintiffs aver that because Claim 2 challenged a continuing violation (the City's signs threatening arrest), they filed within six months of the last violation on December 10, 2022 and that *arguendo*, Defendants waived any defect by failing to give notice of any deficiencies within the statutory period.  Opposition at 3–4.

The continuing violations doctrine is an exception to the rule that a cause of action accrues "'when [it] is complete with all of its elements[:]' . . . wrongdoing, harm, and causation." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1191 (2013) (quoting *Pooshs v. Philip Morris USA, Inc.*, 51 Cal.4th 788, 797 (2011)).  "The continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them." *Id.* at 1192.  The "continued enforcement of a statute" can constitute a "continuing or repeated harm," extending the limitations period. *Flynt v. Shimazu*, 940 F.3d 457, 462–63 (9th Cir. 2019).  In *Flynt*, the Ninth Circuit, analyzing a Dormant Commerce Clause challenge to state statutes prohibiting out-of-state investment in casinos, found that these restrictions constituted a continuing violation such that it extended the applicable state statute of limitations. *Id.*  The Court reasoned that licensees "suffer a new injury each time they abstain from investing for fear that the Commission will enforce the statutes' prohibition." *Id.* at 463 (noting that the state "[stood] ready to enforce such prohibition" every two years, in compliance with its licensing process).

The same is true for Plaintiffs.  Plaintiffs' second claim challenges the City's July 2022 Rules as facially unconstitutional.  EA, Ex. D-5 at 3–4. *See supra* Part IV.A.2.  Each time protestors refrained from using amplified sound or oversized signs in violation of the posted rules, they suffered a new injury, commencing a new limitations period.  Defendants do not dispute that Plaintiffs protested on December 10, 2022, and that the July 2022 Rules remained posted on that day.  SUF ¶ 71.  Thus, Plaintiffs timely presented their June 9, 2023 claim.

1

### b.     <u>State statutory immunity</u>

2        Defendants contend that even if Plaintiffs' state claims were timely, the individual

3 defendants remain immune pursuant to California Government Code section 820.6.  Cal. Gov. Code

4 § 820.6 (immunizing public employees who act "in good faith, without malice, and under the

5 apparent authority of an enactment that is unconstitutional").  Good faith "reflects a subjective

6 intention to act under the authority of the governing enactment, and to enforce or comply with those

7 rules." *O'Toole v. Superior Ct.*, 140 Cal. App. 4th 488, 505 (2006).  An officer acts with malice if

8 they "violate[] the rights of a person either knowingly (i.e., intentionally) or with reckless disregard

9 of those rights." *Id.*

10       Defendants contend that section 820.6 applies because the undisputed evidence establishes

11 that individual Defendants acted in good faith to enforce municipal ordinances.  Motion at 18 (citing

12 UF ¶¶ 54–56). As evidence of the officers' malice, Plaintiffs proffer (1) the Plaintiffs' arrests

13 without probable cause, (2) their enforcement of applicable law only against Plaintiffs; and (3) Park

14 Ranger Chief Joe Losorelli's remark that "The rules are the rules that we're making."  UF ¶ 114,

15 Ex. P-17 at 00:18–00:20 [Dkt. No. 73-81].  The mere fact of Plaintiffs' arrests is insufficient to

16 establish malice; the question is whether the officers did so with knowing or reckless disregard of

17 Plaintiffs' rights.  The parties dispute whether the officers engaged in selective enforcement.

18 Plaintiffs point out while the amplified sound ban and signage restrictions were enforced against

19 protestors, the Pony Rides itself also used amplified sound and the City permitted Pony Ride

20 customers to display signs larger than 8.5 by 11 inches.  *See supra* note 16.  Defendants point out

21 that they also arrested patrons on other occasions or warned patrons that they could be subject to

22 arrest for violence towards protestors.  *See* Renteria Decl. ¶ 5 (testifying that on one occasion, a

23 patron was arrested for throwing a drink at a protestor); Kleckner Decl. ¶ 9 (recalling that he warned

24 parents that they would be arrested if they fought protestors).  Taken together, Defendants have met

25 their summary judgment burden to establish that officers acted with the subjective intent to enforce

26 the relevant municipal ordinances.

27

28

Accordingly, Plaintiffs' state law claims against the individual officers arising from Claim 2 must also be dismissed.[22]  Because Plaintiffs' Ralph Act claim is barred by state statutory immunity, the Court does not address Defendants' substantive argument.

## V.    CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is granted as to: (1) Plaintiffs' Fourth Amendment claims against individual officers; (2) Plaintiffs' Fourth Amendment claims against both the City and individual officers arising from Lecki's September 25, 2022 arrest for violating a court order; (3) Plaintiffs' state law claims arising from Claim 1; and (4) Plaintiffs' state law claims against individual officers arising from Claim 2.  Defendants' motion is denied as to all other claims.  Plaintiffs' claim against the individual officers for violating Plaintiffs' Fourth Amendment rights, Plaintiffs' claims arising from Lecki's September 25, 2022 arrest, and Plaintiff's state law claims against individual officers are dismissed.

Dated: June 20, 2025

Hernán D. Vera
United States District Judge

---

[22] The remainder of Defendants' and Plaintiffs' evidentiary objections are overruled as moot.

24