HYDEE FELDSTEIN SOTO, City Attorney (SBN 106866)
DENISE C. MILLS, Chief Deputy City Attorney (SBN 191992)
KATHLEEN KENEALY, Chief Assistant City Attorney (SBN 212289)
GABRIEL S. DERMER, Assistant City Attorney (SBN 229424)
CARR A. TEKOSKY, Deputy City Attorney (SBN 293767)
JOSEPH S. PERSOFF, Deputy City Attorney (SBN 307986)
200 North Main Street, Room 675
Los Angeles, California 90012
Tel: (213) 978-7560
Fax: (213) 978-7011
E-mail:  joseph.persoff@lacity.org; carr.tekosky@lacity.org

*Attorneys for Defendants*
**CITY OF LOS ANGELES, et al.**

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| THESE PONIES ARE MISERABLE, an unincorporated association, et al.<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES, et al.<br><br>Defendants. | **CASE NO.:** 2:23-cv-8330<br>Related to Case No.: 2:21-cv-09653<br><br>**DEFENDANTS' MOTION FOR SANCTIONS DUE TO PLAINTIFFS' SPOLIATION OF EVIDENCE**<br><br>[Filed concurrently with Notice of Motion; Declaration of Joseph Persoff; Stipulation re: Signal Chat; and [Proposed] Order]<br><br><u>Hearing</u><br>Date: October 2, 2025<br>Time: 10:00 a.m.<br>Courtroom 5B |

**DEFENDANTS' MOTION FOR SANCTIONS**

## TABLE OF CONTENTS

I.    INTRODUCTION…………………………………………………………………………1

II.    RELEVANT BACKGROUND...................................................................................2

    A.    Plaintiffs' Lawsuit ..........................................................................................2

    B.    Written Discovery and Motion to Compel.......................................................2

    C.    Defendants Discover Plaintiffs' Signal Chats..................................................4

    D.    The First Hearing With Magistrate Judge Kim.................................................5

    E.    Other Discovery Misconduct Revealed At Plaintiffs' Depositions; Discovery of a Third Signal Chat and a Facebook Chat.................................................................6

    F.    Plaintiffs' Supplemental Production of Electronic Communications...................8

    G.    Magistrate Judge Kim Issues Sanctions Against Plaintiffs And Opines On The Spoliated Signal Chat ....................................................................................9

III.    LEGAL ARGUMENT ............................................................................................10

    A.    PLAINTIFFS' DELETED SIGNAL CHATS WARRANT DISMISSAL ........10

      1.    Legal Standard........................................................................................11

      2.    Plaintiffs' Duty to Preserve ....................................................................12

      3.    Plaintiffs' Deleted Signal Chats Cannot Be Restored or Replaced Through Additional Discovery.............................................................................12

      4.    Plaintiffs' Failure to Preserve the Signal Chats Was Intentional and Prejudicial 13

      5.    Dismissal Is The Only Justified Sanction.................................................17

    B.    PLAINTIFFS' DESTRUCTION OF PROTEST SIGNS WARRANTS AN ADVERSE INFERENCE JURY INSTRUCTION...........................................23

    C.    DEFENDANTS ARE ENTITLED TO AN AWARD OF REASONABLE ATTORNEYS' FEES.................................................................................25

IV.    CONCLUSION ......................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*FTC v. Noland*, Case No. CV-20-00047,
2021 WL 3857413 (D. Ariz. Aug. 30, 2021) ........................................................16, 23

*Glover v. BIC Corp.*,
6 F.3d 1318 (9th Cir. 1993) ..................................................................................24

*Hunters Capital, LLC v. City of Seattle*,
Case No. C20-0983, 2023 WL 184208 (W.D. Wash. Jan. 13, 2023) ............................13

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
Case No. 07-cv-05944-JST, 2024 WL 4823938 (N.D. Cal. Nov. 15, 2024)...........16, 20

*In re Vaxart, Inc. Sec. Litig.*,
Case No. 20-cv-05949-VC, 2025 WL 1865848 (N.D. Cal. July 7, 2025).....................17

*Jones v. Riot Hospitality Grp. LLC*,
95 F.4th 730 (9th Cir. 2024)......................................................................11, 16, 17, 20

*Jones v. Riot Hospitality Grp. LLC*,
Case No. CV-17-04612, 2022 WL 3682031 (D. Ariz. Aug. 25, 2022) ..................17, 18

*Leon v. IDX Sys. Corp.*,
464 F.3d 951 (9th Cir. 2006) ..........................................................................20, 24, 25

*Pable v. Chicago Transit Auth.*,
145 F.4th 712 (7th Cir. 2025)..................................................................................20

*Pable v. Chicago Transit Auth.*,
Case No. 19 CV 7868, 2023 WL 2333414 (N.D. Ill. Mar. 2, 2023).....................18, 19

*Pable v. Chicago Transit Auth.*,
Case No. 19 CV 7868, 2024 WL 3688708 (N.D. Ill. Aug. 7, 2024) ...........................19

*Pro-Com Products, Inc. v. Optimal Sante, LLC*,
Case No. 2:20-cv-08369-FLA (Ex), 2024 WL 1219790 (C.D. Cal. Feb. 2, 2024) .......24

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,

   442 F.3d 741 (9th Cir. 2006) ...................................................................................23

*RG Abrams Ins. v. Law Offices of C.R. Abrams*,

   342 F.R.D 461 (C.D. Cal. 2022)....................................................................12, 15, 16

**Other Authorities**

The Sedona Conference, *The Sedona Conference Primer on Social Media, Second Edition*, 20 Sedona Conf. J. 1 (2019) ...........................................................................15

**Rules**

Federal Rule of Civil Procedure 37 ....................................................................11, 13, 17

DEFENDANTS' MOTION FOR SANCTIONS

## I.    INTRODUCTION

"@Peter L how are you planning your arrest?"

Neither Defendants, nor the Court, nor a jury will know how Plaintiff Peter Lecki responded to this question from Plaintiff Maria Rios because, on that same day, October 11, 2021, Lecki changed the settings on this Signal chat to automatically delete messages after one week. This chat was not only between Lecki and Rios, however, but every single Plaintiff except for Jeff Fleiss and Amanda Lundberg. Plaintiffs utilized this chat throughout the protests that gave rise to this lawsuit and, despite Plaintiffs engaging in these communications at the same time they were circulating a cease and desist letter to Defendants and engaging in privileged communications with their lawyer, none took steps to preserve these communications. As a result, hundreds of communications—as many as 900 Plaintiff Young Yi estimated—are deleted and cannot be recovered.

While no one will ever know what each of the hundreds of deleted communications were, there were likely communications highly relevant to Plaintiffs' claims—the above message and others strongly suggest as much. Perhaps Plaintiffs' discussions, likely made candidly under the knowledge that they would not be preserved for this litigation, discussed their strategy of harassing Pony Rides patrons, the respectful responses by the Park Rangers, and fear they were imparting on young children. Because Plaintiffs successfully hid these messages from us all, we will never know.

As Magistrate Judge Kim found, the above shows "that information that should have been preserved when a duty arose has been destroyed and it contained relevant, potentially highly probative evidence of facts during the relevant period of the protests here." For this reason and the egregiousness of Plaintiffs' comprehensive discovery misconduct, detailed below, Defendants seek dismissal of all claims brought by all Plaintiffs except for Jeff Fleiss and Amanda Lundberg, as well as additional sanctions due to Plaintiffs' destruction of their protest signs. Courts have issued terminating sanctions for spoliation substantially less severe in scope. Plaintiffs chose to have their

1

DEFENDANTS' MOTION FOR SANCTIONS

strategic discussions via Signal for a reason, and their decision has prevented fair litigation of their claims. Plaintiffs should not profit from their conduct, and allowing Plaintiffs to argue to a jury that they never harassed Pony Rides patrons or scared children while they destroyed the very evidence demonstrating what they really thought, when they thought it, would justify their subterfuge to Defendants' severe prejudice.

## II.    RELEVANT BACKGROUND

### A.    Plaintiffs' Lawsuit

The 17 remaining Plaintiffs allege that, between September 2021 and December 2022, they peacefully protested the Griffith Park Pony Rides. Sec. Amend. Compl. ("SAC") at 3, ECF No. 26. Plaintiffs further allege that the City and 11 Park Rangers responded to their protests with unlawful arrests, threats of arrest, and unconstitutional restrictions of their free speech rights via establishment of a free speech zone and a set of posted rules. *See generally, id*. After presenting claims to the City on March 18, 2022 and June 9, 2023, Plaintiffs initiated this lawsuit on October 3, 2023. *Id*. at 2-3; *see generally*, Compl., ECF No. 1. Following the Court's partial granting of Defendants' Motion for Partial Summary Judgment, Plaintiffs' remaining claims are for violation of the Fourth Amendment against the City and violation of the First Amendment against the City and the 11 Park Rangers. Order re Defs.' Mot. for Partial Summ. J. at 24, ECF No. 86.

### B.    Written Discovery and Motion to Compel

Following the Parties' Fed. R. Civ. P. 26(f) conference on September 19, 2024, Defendants served Plaintiffs with Requests for Production of Documents, Set One, and Interrogatories, Set One, on October 3, 2024. (Declaration of Joseph Persoff ["Persoff Decl."], ¶ 2.) On Plaintiffs' request, Defendants extended Plaintiffs' deadline to respond to the written discovery until December 9, 2024. (*Id*.)

Plaintiffs served unverified responses on December 9, 2024. (Persoff Decl., ¶ 3.) Plaintiffs ultimately served verifications piecemeal, beginning on December 31, 2024 and ending with service of Lecki and Mirzakhanians' verifications on January 14 and 15,

2025. (*Id*.) Plaintiffs served their document production on December 27, 2024. (*Id*.)

On January 13, 2025, Defendants requested Plaintiffs meet and confer pursuant to C.D. Cal. L.R. 37-1 regarding Plaintiffs' incomplete, deficient, and false responses. Defendants raised, in part, the following issues: Plaintiffs' responses that they had no responsive social media documents; their failure to produce electronic communications; their failure to identify in their responses whether they were withholding any documents due to privilege; their failure to provide their social media account names; and their failure to provide a privilege log. (Persoff Decl., ¶ 4, Ex. 1.)

The Parties met and conferred on January 21, 2025. In light of that conference, Plaintiffs agreed (1) to diligently search for more documents, "including text messages, e-mails, social media posts, and comments to social media posts," and to make a supplemental production by February 4, 2025; (2) to supplement their Interrogatory responses regarding social media profiles; (3) to provide a privilege log no later than February 4, 2025; and (4) to provide a written response as soon as practicable to Defendants' January 13 meet and confer letter to clarify the scope of the issues remaining in dispute. (Persoff Decl., ¶ 5, Ex. 2.)

On February 10, 2025, Defendants asked Plaintiffs to provide "dates certain when we will receive (1) Plaintiffs' supplemental document production; (2) a written response to Defendants' January 13, 2025 meet and confer letter regarding Plaintiffs' deficient discovery responses; and (3) Plaintiffs' privilege log.  Your prior email provided that you would be providing items 1 and 3 by February 4, but we have not received either.  Nor have we received a written response to our January 13, 2025 meet and confer letter-- nearly one month later." Plaintiffs responded, "I'll have the 'physical' documents and privilege log to you by end of tomorrow (Feb. 11) and Plaintiffs' written response to your meet/confer as soon as possible, no later than Friday, Feb. 14." (Persoff Decl., ¶ 6, Ex. 3.)

Having not received the promised items, on March 21, Defendants served Plaintiffs with a L.R. 37-2 Stipulation re Defendants' Motion to Compel, asking Plaintiffs to serve

---

3

DEFENDANTS' MOTION FOR SANCTIONS

their responsive portion seven days later. (Persoff Decl., ¶ 7, Ex. 4.) Seven days later, a Friday, Plaintiffs stated that they would deliver their response on Monday. (*Id*.) At 12:12 a.m. on Tuesday, April 1, Plaintiffs served Defendants with a response to Plaintiffs' January 13 meet and confer letter and a privilege log. (Persoff Decl., ¶ 7, Ex. 5.) Plaintiffs did not provide Defendants with a responsive portion of the L.R. 37-2 Stipulation, so Defendants converted the stipulation to a noticed motion and submitted it to Magistrate Judge Kim. (Persoff Decl., ¶ 7.) The Motion raised the following issues, in part: (1) the inadequacy of the privilege log Plaintiffs produced on April 1; (2) the inadequacy of some of Plaintiffs' responses, including their boilerplate objections; and (3) Plaintiffs' failure to produce electronic communications. Defs.' Mot. to Compel, ECF No. 74-1.

On April 14, 2025, Judge Kim issued an order granting Defendants' Motion in part. ECF No. 76. The order generally mandated Plaintiffs provide various supplemental discovery responses within 7, 21, and 28 calendar days, including supplemental Interrogatory responses, a supplemental document production—including social media content and other communications, and a supplemental privilege log. *Id*. After Plaintiffs failed to meet their first deadline, Defendants filed a Motion for Sanctions. ECF No. 77-1. Judge Kim held a hearing on May 14, 2025.

### C.    Defendants Discover Plaintiffs' Signal Chats

The first Plaintiff deposed was Peter Lecki on May 5. During the deposition, Defendants discovered that Plaintiffs had participated in a chat on the Signal application during their protest campaign at the Griffith Park Pony Rides, and, at least for Lecki, his communication with other protestors during the protests "was all over Signal." (Persoff Decl., Ex. 6 [51:12-52:10, 93:15-24].) Lecki also confirmed that the Signal chat had an automatic deletion function enabled, which he was capable of changing. (*Id*. [82:4-14].) Because Lecki enabled the automatic deletion function, all except for 5 messages from this chat were deleted. (Persoff Decl., Ex. 7.) One Plaintiff estimated that there were as many as 900 communications in the chat. (Persoff Decl., Ex. 10 [139:1-17].)

4

DEFENDANTS' MOTION FOR SANCTIONS

Later in his deposition, Lecki testified that there was a second Signal chat he and the Plaintiffs are in, where the messages were not deleted, and Lecki had provided those messages to his attorney. (Persoff Decl., Ex. 6 [83:3-84:3].) Plaintiffs never produced the contents of this second Signal chat, contending that the contents were privileged under the Joint Defense privilege. (*Id*. [94:15-95:2].) As Plaintiffs failed to produce Code-compliant discovery responses or a privilege log which should have revealed the existence of this second Signal chat back in December 2024, Defendants were unable to challenge Plaintiffs' assertion of the privilege until just before the discovery cut-off. While Judge Kim had "serious doubts" about whether Plaintiffs' asserted privilege applied, he ultimately denied Defendants' request to compel production of the second Signal chat without prejudice, citing proportionality concerns, and specifically referencing that there was only a week and a half left until the discovery cut-off.[1] (Persoff Decl., Ex. 11 [60:25-62:1, 69:18-70:24].)

### D.    The First Hearing With Magistrate Judge Kim

On May 14, Judge Kim held a hearing on Defendants' Motion for Sanctions. At the hearing, Defendants raised more discovery issues that arose since filing the Motion:

- Defendants attempted service of subpoena on Zohra Fahim, the person who started the Griffith Park Pony Rides protest campaign. Prior to first attempting service, Defendants provided Plaintiffs with notice that they would be serving the subpoena. After multiple attempts at service, Defendants' process server was informed that Fahim was no longer at that address. After failure of service, Defendants discovered that Plaintiffs' counsel is representing Fahim in an unrelated matter. When asked whether he communicated with Fahim about the impeding subpoena, Plaintiffs' counsel invoked the attorney-client privilege. (Persoff Decl., ¶ 12, Ex. 12.) At the hearing, Plaintiffs' counsel stated that his understanding was that Fahim was being represented by another attorney

---

[1] This second Signal chat is not the subject of this Motion.

DEFENDANTS' MOTION FOR SANCTIONS

and that she had been served with the subpoena. (Decl. of Jerold D. Friedman, ¶ 3, ECF No. 81.) Based on that statement, Judge Kim directed Defendants to contact that attorney regarding accepting service of the subpoena, which they did, but the attorney never responded. (Mins. Re: Defs.' Mot. for Sanctions, ECF No. 80.) Plaintiffs' counsel subsequently discovered his statement at the hearing was inaccurate and submitted a declaration correcting the record. ECF No. 81. Defendants were never able to serve Fahim. (Persoff Decl., ¶ 12.)

- At the deposition of Plaintiff Michael Hegger on May 7, 2025, he testified that his girlfriend attended protests with him, but she was not disclosed as a witness on Plaintiffs' initial disclosures. Judge Kim ordered her to be excluded as a trial witness. ECF 80 at 1.

In addition to these issues, Judge Kim ordered Plaintiffs to serve an amended privilege log by May 23, 2025 and to diligently search for and produce responsive social media content. ECF No. 80 at 2. In regard to the first Signal chat, Judge Kim also "acknowledge[d] potential spoliation issues with the apparent loss/failure to preserve/destruction of pre-lawsuit Signal Group Chats between and among not just plaintiffs but other nonparties to the lawsuit because of the default auto-deletion setting for the Signal application. But further predicate facts would have to be developed—by both sides—if the City believes that evidence spoliation is significant enough to warrant litigation and requests for sanctions under the Federal Rules." *Id*. Finally, Judge Kim conditionally issued $4,500 in monetary sanctions against Plaintiffs. *Id*. at 2-3.

**E.    Other Discovery Misconduct Revealed At Plaintiffs' Depositions; Discovery of a Third Signal Chat and a Facebook Chat**

Further Plaintiffs' depositions revealed more discovery violations:

- Michael Hegger: In addition to discovery of his failure to disclose his girlfriend as a witness, Hegger acknowledged he participated in the first Signal chat and did not disclose all of his social media accounts. (Persoff Decl., Ex. 13 [17:16-23, 26:5-28:10, 34:3-21].)

6

DEFENDANTS' MOTION FOR SANCTIONS

- Eric Castro: Castro acknowledged he participated in the first Signal chat. Castro also failed to disclose all of his social media accounts. Most significantly, Castro admitted that he destroyed signs used at the subject protests in early 2025. Castro claimed he was not aware of his obligation to preserve evidence. (Persoff Decl., Ex. 14 [34:6-35:13, 39:17-40:21, 80:16-81:9].)

- Maria Rios: During her deposition on May 15, in addition to confirming her participation in the first Signal chat, Rios disclosed the existence of a *third* Signal chat, titled "Pony Ride Campaigns Organizers," which included herself, Lecki, and Fahim. (Persoff Decl., Ex. 15 [28:4-29:23].) The messages in this "Organizers" chat have been deleted. (*Id.*) Rios also testified that she disposed of the cell phone she used during the protests, that she possibly deleted messages with other Plaintiffs and protestors about the protests, that she could have had a journal with entries regarding the protests that she has not produced, and that she does not know what happened to her protest signs. (Persoff Decl., Ex. 15 [58:19-59:19, 112:4-14, 117:21-118:5, 120:2-9, 158:17-25].)

- Arameh Mirzakhanian: Mirzakhanian testified he took notes about the protests but has not produced them; he had text messages and social media messages about the protests which he did not review in preparing his response to the requests for production; he was part of a Facebook group chat with other protestors; he did not do a thorough job of looking for responsive documents, in part because he did not feel the importance as he assumed others would provide the information; he did not disclose all witnesses; and he did not disclose all of his social media profiles and content. (Persoff Decl., Ex. 16 [13:23-16:6; 18:11-14, 19:16-20:10, 38:23-39:25, 60:6-67:4, 67:7-68:13, 69:23-72:14, 76:10-80:3, 81:4-84:24, 85:24-87:25].)

- Denzil Rodrigues: Rodrigues testified that he disposed of the phone he was using during the protests and text messages with protestors may have been lost; he discussed the protests with other protestors, in both a Signal chat and a Facebook chat, but that the Facebook chat had not been produced, and that, as of his May 20, 2025 deposition, he

DEFENDANTS' MOTION FOR SANCTIONS

had only done an initial search; he did not disclose all of his social media accounts; and there were videos from the protests that he never produced and they were likely lost because they were on his old phone. (Persoff Decl., Ex. 17 [34:8-23, 37:11-38:24, 52:1-25, 72:18-76:6, 123:12-16].)

- Michael Fujimori: Fujimori testified he did not review his Facebook communications for responsive documents; he no longer has the phone he used during the protest and does not know if all of the photos and videos he took on that phone were transferred to his current phone. (Persoff Decl., Ex. 19 [42:7-19, 45:10-46:8].)

- Young Yi: Yi testified the signs she used at the protests may have been thrown out by now. (Persoff Decl., Ex. 10 [70:2-72:9; 73:18-22].)

- Alondra Reveles: Reveles testified she made signs for use at the protest but has not looked for them. (Persoff Decl., Ex. 20 [63:7-64:12].)

**F.     Plaintiffs' Supplemental Production of Electronic Communications**

Plaintiffs ultimately produced some electronic communications. A number of them shed light on the content of the deleted Signal chat communications:

- Lecki produced what remains of the deleted Signal chat, titled, "GPPR campaign." The chat appears to have been created by Rios on October 11, 2021, and on that date she asked Lecki, "how are you planning your arrest?" That same day, Lecki changed the settings to delete messages after one week. There are no remaining messages after that. (Persoff Decl., Ex. 7.)

- Lecki produced a text conversation with non-Plaintiff Tyler Kegler; Kegler is referencing the arrest of Rios and says to Lecki, "Let's both speak truth two at a time next time and see if we can double their paper work." Lecki responds, "Tyler I am not discussing actions or action plans with anyone over a clear network, over SMS. Signal only." Kegler then says that his Signal application is not working, to which Lecki says, "Do whatever you gotta do because we're not talking on unencrypted platforms." (Persoff Decl., Ex. 8.)

DEFENDANTS' MOTION FOR SANCTIONS

- Lecki produced a conversation with another non-Plaintiff; after Lecki says to him, "I would be damn grateful if you could help me scout some new targets for the GPPR campaign," Lecki adds, "Btw, can we move this to Signal? I'm about to start dropping incriminating details and shit ;-)." (Persoff Decl., Ex. 9.)

- A Feb. 21, 2022 message between Rios and Yi states, "Hey do you still have the flyers for the pony protests? They got erased from signal." (Persoff Decl., Ex. 21.)

Other Plaintiffs produced some electronic communications, but they are likely incomplete. For example, after her June 27, 2025 deposition, Yi produced social media communications; in that production, the produced communications jump from September 27, 2021 to October 5, 2021. The October 5 message from Yi states, "They'll have to provide proof that we were being aggressive, disruptive, unruly. Otherwise, these are all subjective terms, which many may not perceive in the same way." The message or messages Yi is responding to is cut-off and has not apparently been produced. (Persoff Decl., Ex. 22.) Defendants notified Plaintiffs that Ms. Yi's production appeared to be incomplete, but never received any explanation or supplemental production. (Persoff Decl., Ex. 24.)

**G. Magistrate Judge Kim Issues Sanctions Against Plaintiffs And Opines On The Spoliated Signal Chat**

At Defendants' request, Judge Kim held an Informal Discovery Conference with the Parties on July 9 on Plaintiffs' failure to comply with all of their obligations as ordered by Judge Kim on May 14, as well as other issues. ECF No. 88. Specifically, Defendants sought (1) issuance of the $4,500 in monetary sanctions that Judge Kim previously awarded conditionally, (2) an order compelling Plaintiffs to produce the contents of the second Signal chat, (3) an order appointing a forensic examiner at Plaintiffs' expense to determine whether the deleted Signal chat communications could be recovered, and (4) additional monetary sanctions due to additional discovery violations revealed since the prior hearing. ECF No. 88 at 2.

DEFENDANTS' MOTION FOR SANCTIONS

At the hearing, Judge Kim issued the $4,500 sanctions award and, as noted above, denied without prejudice Defendants' request for an order compelling Plaintiffs to produce the contents of the second Signal chat. ECF No. 91.

In regard to the first Signal chat, Judge Kim concluded that, "prima facie, [Plaintiffs] have eliminated some evidence that is probative after a duty to preserve," "[Defendants] have shown that information that should have been preserved when a duty arose has been destroyed and it contained relevant, potentially highly probative evidence of facts during the relevant period of the protests here," and that the evidence Defendants do have regarding the first Signal chat, "shows the relevance, potential prejudice[,] and intent to deprive." (Persoff Decl., Ex. 11 [21:7-8, 25:15-19, 39:5-9].) Specifically, regarding Defendants' request for a forensic examiner, Plaintiffs opposed the request as cost prohibitive and agreed to stipulate that the deleted Signal communications could not be recovered. (*Id*. [29:4-31:2].) Judge Kim explained that "the person who needs to be asking me for [appointment of a forensic examiner] at this point is [Plaintiffs' counsel]" and Defendants have "now done everything [they] can." (*Id*. [27:25-28:23]; *see also id*. [28:8-9] ("And then you can start going after terminating sanctions as well.").

Ultimately, in light of the Parties' respective positions, Judge Kim ordered the Parties to meet and confer and stipulate regarding (1) the Plaintiffs who participated in the first Signal chat; (2) the devices used by those Plaintiffs; and (3) whether the deleted Signal communications can be recovered. ECF No. 91 at 1. The Parties have therefore stipulated that all Plaintiffs except for Amanda Lundberg and Jeff Fleiss participated in the first Signal chat and that the deleted communications in that chat cannot be recovered. (Stipulation re: Signal Chat ["Stipulation"]).

## III.    LEGAL ARGUMENT

### A.    PLAINTIFFS' DELETED SIGNAL CHATS WARRANT DISMISSAL

At the same time Plaintiffs were threatening Defendants with a lawsuit, they were secretly communicating with each other in a Signal chat regarding their protests at the

Griffith Park Pony Rides. With the exception of five communications, one of which being Rios asking Lecki, "how are you planning your arrest?", all of the communications are deleted and, as Plaintiffs agree, cannot be recovered. Those communications were deleted and cannot be recovered because Lecki set the Signal chat to automatically delete all messages after one week and no other Plaintiff on the chat took any steps to preserve the communications, as they were obligated to do.

Judge Kim noted that this message from Rios to Lecki alone "shows the relevance [of the Signal chat], potential prejudice[,] and intent to deprive." (Persoff Decl., Ex. 11 [39:8-9].) Under this circumstance, Federal Rule of Civil Procedure 37(e) provides for sanctions. Due to the significance of scope and likely significance of Plaintiffs' spoliated Signal chats, Plaintiffs' misconduct has prevented Defendants from being able to fully defend against Plaintiffs' claims, warranting terminating sanctions. Courts have issued terminating sanctions for less.

### 1. Legal Standard

Federal Rule of Civil Procedure 37(e) confers a court with authority to issue sanctions "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." If the court finds the loss prejudicial, it may order measures no greater than necessary to cure the prejudice. *Jones v. Riot Hospitality Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024). If the court finds that an offending plaintiff acted with the intent to deprive another party of the information's use in the litigation, dismissal is authorized. *Id*. "Because intent can rarely be shown directly, a district court may consider circumstantial evidence in determining whether a party acted with the intent required for Rule 37(e)(2) sanctions." *Id*. To determine intent, relevant considerations include the timing of destruction, affirmative steps taken to delete evidence, and selective preservation. *Id*.

### 2. Plaintiffs' Duty to Preserve

The Parties do not dispute that Plaintiffs' duty to preserve the Signal chat communications arose during a time when Plaintiffs were engaging in the Signal chat communications. (Stipulation.) The Parties differ regarding the specific date when each Plaintiffs' duty to preserve arose. Defendants' position is that Plaintiffs' duty to preserve arose on September 23, 2021 because Plaintiffs' privilege log provides that Plaintiffs withheld production of documents due to attorney-client privilege as early as that date, reflecting that Plaintiffs reasonably anticipated litigation. Persoff Decl., Ex. 27; *see RG Abrams Ins. v. Law Offices of C.R. Abrams*, 342 F.R.D 461, 503 (C.D. Cal. 2022) ("Under the common law, the duty to preserve arises 'not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.'".) In fact, on October 4, 2021, Yi said to Denzil Rodrigues, "there's actually a case a lawyer is working on on our side in defense of the activists who got detained / arrested." (Persoff Decl., Ex. 23.) At the latest, Plaintiffs' duty to preserve arose on October 14, 2021, when, as they allege, "Plaintiffs delivered a cease-and-desist letter, demanding that the City (including Losorelli), respect their rights to expressive activity under the federal and California Constitutions." Sec. Am. Compl. at 21, ¶ 74, ECF No. 26; *see RG Abrams Ins.*, 342 F.R.D. at 503-04 (relying on service of cease-and-desist letter to find triggering of duty to preserve).

Notwithstanding the above, the difference in the Parties' positions is likely immaterial, as even under Plaintiffs' later dates, they were still failing to preserve Signal chat communications that they had a duty to preserve.

### 3. Plaintiffs' Deleted Signal Chats Cannot Be Restored or Replaced Through Additional Discovery

Because it is undisputed that Plaintiffs were under a duty to preserve Signal chat communications and did not, the only remaining requirements under Rule 37(e) to trigger sanctions are whether the chats can be recovered or replaced through additional

DEFENDANTS' MOTION FOR SANCTIONS

discovery. Plaintiffs agree that the chats cannot be recovered. Stipulation; *see Hunters Capital, LLC v. City of Seattle*, Case No. C20-0983, 2023 WL 184208, at *11 (W.D. Wash. Jan. 13, 2023) ("Signal is known for 'disappearing messages,' which can be automatically erased from every participant's phone after a period set by the sender."). The chats cannot be replaced through additional discovery, as the nature of the communications is unique: the Plaintiffs were communicating privately as a group. Further, when asked at deposition about the matters they discussed, Plaintiffs did not remember. (Persoff Decl., Exs. 10 [143:21-144:3], 15 [33:6-34:13], 19 [37:7-38:17; 46:25-48:8].) At deposition, Rios specifically acknowledged she cannot think of any other way to get similar evidence to what was discussed in the Signal chat and that the deleted Signal chats would be pretty good evidence of what happened at each protest and what the protestors intentions were. (Persoff Decl., Ex. 15 [44:7-17].) Therefore, the requirements of Rule 37(e) are met, warranting sanctions.

### 4. Plaintiffs' Failure to Preserve the Signal Chats Was Intentional and Prejudicial

Under Rule 37(e)(1), upon finding prejudice to Defendants, the Court may order measures no greater than necessary to cure the prejudice. Alternatively, under Rule 37(e)(2), if the Court finds that Plaintiffs acted with an intent to deprive Defendants of the Signal chat, the Court may (a) presume that the Signal chats were unfavorable to Plaintiffs; (b) instruct the jury that it may or must presume the Signal chats were unfavorable to Plaintiffs; or (c) dismiss the action.

The following communications establish that Plaintiffs' failure to preserve the Signal chats was both prejudicial and intentional:

- On October 11, 2021, Rios added Lecki to a Signal chat titled "GPPR Campaign and asked him, "how are you planning your arrest?" That same day, before responding to Rios, Lecki changed the setting on the Signal chat to disappear after one week. There are no communications remaining from the chat; all that remains is

notifications when members joined or left the chat, changed their name, and when Rios changed the group name on December 16, 2022 to "happy t3rr0riST group." On January 6, 2023, someone named Stephen disabled disappearing messaged, but that same day Lecki changed the setting back to delete messages after one week. (Persoff Decl., Ex. 7.)

- On November 13 and 14, 2021, Lecki was text messaging with non-Plaintiff Tyler Kegler regarding the arrest of Rios; presumably referencing Park Rangers, Kegler stated, "Let's both speak truth two at a time next time and see if we can double their paper work." Lecki responded, "Tyler I am not discussing actions or action plans with anyone over a clear network, over SMS. Signal only." Kegler then responded that his Signal was not working and Lecki replied, "Do whatever you gotta do because we're not talking on unencrypted platforms." (Persoff Decl., Ex. 8.)

- A Feb. 21, 2022 message between Rios and Yi states, "Hey do you still have the flyers for the pony protests? They got erased from signal." (Persoff Decl., Ex. 21.)

- On November 16, 2022, Lecki was communicating with a non-Plaintiff about the protests at the Griffith Park Pony Rides: "I would be damn grateful if you could help me scout some new targets for the GPPR campaign." Lecki followed that message up with, "Btw, can we move this to Signal, I'm about to start dropping incriminating details and shit ;-)." (Persoff Decl., Ex. 9.)

Based on the Lecki communications above, Judge Kim concluded that, "prima facie, [Defendants] have shown that information that should have been preserved when a duty arose has been destroyed and it contained relevant, potentially highly probative evidence of facts during the relevant period of the protests here," and that the evidence above, "shows the relevance, potential prejudice[,] and intent to deprive." (Persoff Decl., Ex. 11 [25:15-19; 39:8-9].)

Further, at deposition, Lecki testified that he was capable of changing the automatic deletion setting on the Signal chat and that he was using the Signal chat throughout the protests, and that his communication with other Plaintiffs during the

14

DEFENDANTS' MOTION FOR SANCTIONS

protest was "all over Signal," rather than via other forms of communication. (Persoff Decl., Ex. 6 [82:11-19, 93:15-94:1].)

While it is impossible to know how probative these deleted communications were—because Plaintiffs deleted them—the evidence discussed above shows that Judge Kim's conclusion was correct that the communications were potentially highly probative. The issues in this case involve whether the arrested Plaintiffs (primarily Lecki) were interfering with the Pony Rides business and to what extent the regulations impacted Plaintiffs' speech. We know that it is very likely that Lecki discussed his plan to be arrested at least once, but Plaintiffs could have also discussed plans to antagonize Pony Ride patrons in order to interfere with the business, they could have discussed the Defendant Park Rangers and how the Rangers treated them respectfully, and they could have discussed how they, despite the Free Speech Zone and the July 2022 Rules, were still able to communicate their messages to the public. *RG Abrams Insurance*, 342 F.R.D. at 507 (to show that deleted evidence was relevant, a party need only come forward with plausible, concrete suggestions as to what the destroyed evidence might have been). All of this is information that Defendants were entitled to discover and a jury would need to hear to tell the whole story, but Plaintiffs made that impossible by their spoliation. *Id*. ("Prejudice exists where 'the [spoiling party's] actions impaired [the moving party's] ability to go to trial or threatened to interfere with the rightful decision of the case.'") (quoting *U.S. ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 604 (9th Cir. 1988)); *see also* The Sedona Conference, *The Sedona Conference Primer on Social Media, Second Edition*, 20 Sedona Conf. J. 1, 90-91 (2019) ("A client's use of ephemeral messaging for relevant communications after a duty to preserve has arisen may be particularly problematic, as it would have the potential to deprive adversaries and the court of relevant evidence.").

Judge Kim also correctly recognized that this evidence reflects Plaintiffs' intent to deprive Defendants of the Signal chats. "In the Ninth Circuit, destruction of evidence is

considered willful spoliation when a party has 'some notice that documents were *potentially* relevant to litigation before they were destroyed.' *Leon*, 464 F.3d at 959 (quoting *U.S. v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002)). Plaintiffs cannot reasonably dispute that the deleted messages were potentially relevant to the litigation. Notably, in *Jones*, the Ninth Circuit found the district court properly determined intent where there was "at least one message that had a direct bearing on [the] case." *Jones*, 95 F.4th at 735-36. Here, there were potentially hundreds of deleted communications that had a direct bearing on this case.

Moreover, "intent may be inferred where a party is on notice that documents potentially are relevant but fails to take the steps necessary to preserve them, or otherwise seeks to keep incriminating facts out of evidence." *RG Abrams Ins.*, 342 F.R.D. at 508. Here, at the same time they were outwardly threatening litigation against Defendants, they were seeking to hide their communications regarding the very subject of that threatened litigation. While only Lecki seems to have taken the affirmative step of changing the Signal chat settings to automatically delete the messages, no other Plaintiff took steps to preserve the messages before they were deleted despite surely being aware that messages were being deleted. Plaintiffs would have been aware either due to the notification on the chat that messages were set to delete; that, despite being in the chat for over a week, they would not be able to see messages older than a week; or just from general knowledge about how the Signal application works.[2] *See In re Cathode Ray Tube (CRT) Antitrust Litig.* ("*Cathode*"), Case No. 07-cv-05944-JST, 2024 WL 4823938, at *20 (N.D. Cal. Nov. 15, 2024) ("Irico's conduct was within its control and therefore 'is sufficient to demonstrate willfulness, bad faith, or fault,' as required to impose a sanction that 'results in default.'"). Tellingly, Plaintiffs' deposition testimony reflected a cavalier

---

[2] As noted in a district court ruling from August 30, 2021—just over a month before the creation of the subject Signal chat here, "The key security features of Signal are its end-to-end encryption and its assurance that all messaging data, including the content of the communications, cannot be tracked or observed by Signal itself or any party that does not have access to the user's device." *FTC v. Noland*, Case No. CV-20-00047, 2021 WL 3857413, at *2, n.1 (D. Ariz. Aug. 30, 2021).

DEFENDANTS' MOTION FOR SANCTIONS

and dismissive attitude toward their discovery obligations. (*See, e.g.*, Persoff Decl., Exs. 13 [28:12-19], 14 [40:4-21], 15 [159:18-160:21], 16 [59:6-13, 71:19-25], 17 [50:3-12], 18 [40:4-41:12], 20 [196:15-197:1].)

As the evidence shows that Plaintiffs' failure to preserve the Signal chat communications was intentional and is prejudicial to Defendants, the Court has authority to issue the full slate of sanctions authorized under Rule 37(e).

### 5.    Dismissal Is The Only Justified Sanction

With a finding that Plaintiffs failed to preserve the Signal chat messages prejudiced Defendants, the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). In such an instance, "the severe measures authorized by [Rule 37(e)] should not be used when the information lost was relatively unimportant or lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss." *Jones*, 95 F.4th at 736. With a finding that Plaintiffs' failure to preserve the Signal chat messages was intentional, the Court may dismiss the action without a consideration of lesser sanctions. Fed. R. Civ. P. 37(e)(2).

Plaintiffs' deleted Signal chats were such unique evidence that were so potentially probative to their claims that their deletion of them threatens to interfere with the rightful decision of the case, warranting dismissal. *See In re Vaxart, Inc. Sec. Litig.*, Case No. 20-cv-05949-VC, 2025 WL 1865848, at *6 (N.D. Cal. July 7, 2025) ("But those communications do not substitute for the text messages sent exclusively between two of the key individuals in the case."). Courts have issued dismissal sanctions for less significant violations than here. In one example, *Jones*, a harassment case, the plaintiff deleted approximately 51 text messages between herself and former co-workers. *Jones v. Riot Hospitality Grp. LLC*, Case No. CV-17-04612, 2022 WL 3682031, at *4 (D. Ariz. Aug. 25, 2022). The court found that these deleted messages "threatened to interfere with the rightful decision of the case" because "Plaintiff's deleted communications with her witnesses have potential relevance to the merits of the case and could have been used to

test the credibility of Plaintiff's claims, they likely would have been 'at the heart of [Defendants'] defense were [they] available.'" *Id*. at 11. Further, in finding that lesser sanctions would not be warranted, the court explained that "Plaintiff has engaged in spoliation in a manner that undermines Defendants' ability to test her account and has presumptively deprived Defendants of evidence favorable to their defense." *Id*. at 12.

Plaintiffs' spoliation here is even more egregious: the communications were not just with third parties as they were in *Jones*, but they were between the Plaintiffs themselves. Also, unlike in *Jones* with 51 deletes messages, here are there as many as 900. Finally, and perhaps most significantly, apparently missing from *Jones* were the clear indicators of relevance of the deleted messages that are present here: Rios's message to Lecki asking him how he was going to plan his next arrest, Lecki's message to Kegler that he would only discuss strategy regarding interactions with Park Rangers (Defendants in this lawsuit) on Signal, and Lecki's other message that he wanted to move a conversation to Signal because he was going to say "some incriminating shit."

Another case is even more on point as it also involves Signal communications. In that case, a whistleblower lawsuit, the plaintiff was working as a computer programmer for the Chicago Transit Authority ("CTA") and discovered a vulnerability in a CTA application. *Pable v. Chicago Transit Auth.*, Case No. 19 CV 7868, 2023 WL 2333414, at *3 (N.D. Ill. Mar. 2, 2023). The plaintiff and his supervisor decided to test the vulnerability on another city's transit system. *Id*. The plaintiff discussed this issue with his supervisor via Signal, but no one else. *Id*. As a result of the incident, the plaintiff was placed on leave and then he chose to resign and filed a whistleblower complaint. *Id*. at *5, 8. The supervisor deleted the Signal communications. *Id*. at 6.

The Magistrate Judge recommended dismissal for a number of reasons: (1) "[t]he scope of the spoliation–'combined with the commonsense assumption, built into Rule 37(e)(2), that parties who engage in intentional spoliation have something to hide'– weighs in favor of dismissal."; (2) the plaintiff and his supervisor lied regarding the

DEFENDANTS' MOTION FOR SANCTIONS

spoliation of the Signal chats; and (3) the spoliated information was not "relatively unimportant" or "relevant only to a peripheral issue." *Pable*, 2023 WL 2333414, at *33-34. The court expanded on this third point: "The spoliation of these messages in all probability deprived the CTA of valuable impeachment evidence and other statements that could either support its collusion defense or undermine [plaintiff's] alleged whistleblower status. Finally, the spoliation of [plaintiff's] phone ensured, at a minimum, that essentially no relevant Signal messages would be recovered and used against [plaintiff], and that the CTA could not use objective data from the phone to respond to [plaintiff's] claims about how he had configured his Signal app or that CTA had initialed a remote 'wipe' of [plaintiff's] phone." *Id*. at *34.

Finally, the court found a lesser sanction would be insufficient to redress the spoliation because the only alternative that was "even arguably proportionate to the spoliation [was] a mandatory adverse-inference instruction," but due to the scope of the spoliation, such a sanction would be ineffective: "given the total spoliation of the Signal messages here and the near-complete loss of user-generated data on the phone, there is no way to determine the specific content of those messages and mitigate or cure the prejudice to CTA by crafting jury instructions or presumptions based on the unfavorable effect of the messages or the spoliated phone." *Pable*, 2023 WL 2333414, at *35.

The district court adopted the Magistrate's recommendation: "A lesser sanction would not be sufficient to cure the prejudice that CTA has suffered due to the spoliation because it is 'impossible to determine the full extent of the spoliation.' . . . As a result, it is difficult to ascertain 'the presumably unfavorable effect of that information, and thus no way to craft instructions or presumptions that would eliminate—or even substantially mitigate—the prejudice to [the defendant].' . . . Dismissal of the complaint will help deter other litigants from engaging in similar conduct. *Pable v. Chicago Transit Auth.*, Case No. 19 CV 7868, 2024 WL 3688708, at *9 (N.D. Ill. Aug. 7, 2024) (internal citations

---

19

DEFENDANTS' MOTION FOR SANCTIONS

omitted). The Seventh Circuit affirmed the district court's decision. *Pable v. Chicago Transit Auth.*, 145 F.4th 712, 719-22 (7th Cir. 2025).

The *Pable* court's reasoning applies equally here. As in *Pable*, the full extent of Plaintiffs' spoliation is impossible to determine and, as a result, there is no way to craft instructions or presumptions that would eliminate or even substantially mitigate the prejudice to Defendants. *See Cathode*, 2024 WL 4823938, at *22 ("Nor would it be sufficient to provide an adverse inference instruction to the jury. As in *WeRide*, the 'destruction of evidence [in this case] was so sweeping that this case cannot be resolved on its merits,' and 'any jury instruction or exclusion of evidence would be inappropriate here because the spoliation occurred on such a massive scale.'"). Notably, as with *Jones*, the spoliation here is even more significant as the deleted Signal chat communications were between Plaintiffs rather than third parties.

Ninth Circuit precedent is in accord. As previously discussed, in *Jones*, the court affirmed the district court's finding that dismissal was warranted because no lesser sanction would be effective. 95 F.4th at 736. In another case, a company filed a declaratory relief action seeking to establish it could terminate an employee; after initiating the action, it requested the employee return his company-issued laptop. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 955-56 (9th Cir. 2006). After the employee returned the laptop, more than 2,200 files had been deleted. *Id.* at 956. The Ninth Circuit affirmed the district court's finding that lesser sanctions would not be useful "because a ruling excluding evidence would be 'futile,' and fashioning a jury instruction that creates a presumption in favor of [the company] 'would leave Defendants equally helpless to rebut any material that Plaintiff might use to overcome the presumption.'" *Id.* at 960.

Another characteristic that this case shares with cases where courts have issued terminating sanctions is other instances of discovery misconduct or false discovery responses, which demonstrates the futility of any lesser sanction. Defendants discuss these instances at length in the background section above, but focus on a few here. First,

Plaintiffs refused to produce electronic communications until Judge Kim granted Defendants' Motion to Compel. Rather, Plaintiffs objected that "this request is overbroad as a classic, forbidden fishing expedition; on its face this request seeks documents (such as casual e-mail barely mentioning only the fact of a protest) disproportionate to the needs of the case that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." (Persoff Decl., Ex. 25.) Plaintiffs ultimately produced some electronic communications which were certainly more than "a casual e-mail barely mentioning only the fact of a protest," although Defendants are confident there are many more communications that Plaintiffs have not produced.[3] Most significantly, however, Plaintiffs served these responses on December 9, 2024; had Plaintiffs complied with their obligations and produced the electronic communications they had not deleted, Defendants would have discovered the Signal chats then, instead of in May 2025—two months before the discovery cut-off and after Defendants filed their Motion for Partial Summary Judgment. If it was at all possible to cure or mitigate the prejudice from Plaintiffs' deleted Signal chats, Plaintiffs five-month delay extinguished that possibility.

Second, Plaintiffs' other false and evasive discovery responses demonstrate the prejudice from the deleted Signal chats cannot be mitigated or cured:

- After discovery of the Signal chat at Lecki's deposition, many Plaintiffs stopped bringing their cell phones to deposition. (Persoff Decl., Exs. 13 [17:24-25], 14 [123:1-3], 16 [40:1-2], 17 [53:10-11]. During Rios's virtual deposition, when asked whether she "ha[d] her phone with [her] right now," she responded, "not on my person." (Persoff Decl., Ex. 15 [25:15-17, 27:19-28:2].) When asked to retrieve the phone, it took her less than five seconds to do so. (*Id.* [27:19-28:2].) Following retrieval of Rios's cell phone, Defendants were able to discover the existence of another Signal chat, "Pony Ride Campaigns Organizers," a chat between Rios, Lecki, and third-party Zohra Fahim, as

---

[3] For example, Yi's social media conversation where she appears to be responding to a question about the Park Rangers' response to their protests but that question and prior communications were not produced. (Persoff Decl., Ex. 22.)

DEFENDANTS' MOTION FOR SANCTIONS

well as current participants in the main "GPPR Campaign" chat. (Persoff Decl., Ex. 15 [28:4-25, 31:5-13, 32:15-20, 37:12-38:14].) Defendants were fortunate that Rios's deposition was virtual; if not, because Plaintiffs were habitually not bringing their cell phone to deposition, this information may have not been discovered.

- During deposition, Plaintiffs refused to acknowledge that they would yell during the protests, consistently testifying instead that they were speaking with an "elevated voice." (Persoff Decl., Exs. 6 [55:8-56:2, 59:13-23, 61:17-62:2, 75:2-10], 10 [104:24-105:15], 13 [15:6-23], 15 [108:10-23]; 17 [29:8-17], 18 [20:5-12].) The deleted Signal chats perhaps contained admissions by Plaintiffs that they were, in fact, yelling at Pony Rides patrons and children. Similarly, during deposition Plaintiffs commonly refused to acknowledge the significant presence of children at the Pony Rides or that they were utilizing the presence of children to achieve their goals, such as by either scaring or intimidating children or by dressing in a way which the average parent would not want to expose their children to. (*See, e.g.*, Persoff Decl., Exs. 6 [59:13-23], 13 [19:1-14], 14 [28:1-8], 15 [100:8-20], 17 [80:14-17], 18 [23:10-21].) The deleted Signal chats may have shown that, but we will never know.[4]

- Rios provides another example of evasive deposition testimony: despite apparently creating the "GPPR Campaign" chat and being a member of the "Organizers" chat and acknowledging that the protest campaign was significant to her, she testified that she did not remember the purpose of the chats and she had no recollection of what was discussed, or what she used the Signal communications for. When asked whether it seemed unlikely that she did not remember anything about the Signal chats despite being an organizer of the protests which were significant to her, she responded, "No. Because without any foundation of what we – what was discussed or why, I can't tell you what was – what were my thoughts when they were created, or what weren't they." (Persoff Decl., Ex. 15

---

[4] This assertion is not purely speculation, as Plaintiffs have admitted their group's protest style was more confrontational than that of the group led by Zohra Fahim. (Persoff Decl., Ex. 6 [55:8-11].)

[32:21-34:13].) Admittedly, not every Plaintiff gave such evasive testimony: Denzil Rodrigues admitted that Ranger Kleckner allowed him to protest from his "ideal" location. (Persoff Decl., Ex. 17 [110:7-111:16].)

- Perhaps the most blatant false testimony is Lecki failing to disclose a lawsuit he brought. Lecki was asked multiple times whether he had been party to a lawsuit other than this one. Despite the numerous opportunities to do so, he never disclosed the lawsuit he filed less than two months before his deposition—a challenge to his arrest while he was "attempting to peacefully protest" at The Grove by playing the sound of animals being skinned alive on a loud speaker. (Persoff Decl., Exs. 6 [9:19-12:22], 26[5].)

Plaintiffs contend in this lawsuit that they were peaceful protesters who never yelled at or harassed Pony Ride patrons. Plaintiffs stuck to this story at deposition. The most probative evidence of what they really thought was likely contained in their Signal chat when they communicated amongst themselves regarding the protests thinking that no one was watching. But Plaintiffs have deprived Defendants and the jury of this critical evidence, thereby irreparably tainting trial. *See Noland*, 2021 WL 3857413, at *1 ("The Individual Defendants' systematic efforts to conceal and destroy evidence are deeply troubling and have cast a pall over this action."). In this situation, the only justifiable sanction is to terminate the claims brought by all Plaintiffs who participated in the Signal chat. Any lesser sanction would not cure the prejudice to Defendants and would amount to a victory for Plaintiffs, justifying their concealment of the truth.

### B. PLAINTIFFS' DESTRUCTION OF PROTEST SIGNS WARRANTS AN ADVERSE INFERENCE JURY INSTRUCTION

Much of Plaintiffs' claims arise out of restrictions on their usage of signs. In response to Defendants' request for production of such signs, Plaintiffs responded that they are unable to produce them, "as I have discarded any posters and leaflets on or

---

[5] The Court may take judicial notice of court filings. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 464, n.6 (9th Cir. 2006).

23
DEFENDANTS' MOTION FOR SANCTIONS

before the last protest against the Pony Ride Business." (Persoff Decl., Ex. 25.) Further, Eric Castro, who made "a bunch" of the signs used at the protests for himself and other protestors to use, testified that he threw the signs away *earlier this year*. (Persoff Decl., Ex. 14 [32:23-34:13, 39:17-40:13.].) Following the Parties' L.R. 7-3 conference, Plaintiffs dispute that they spoliated the signs, therefore precluding the imposition of sanctions. The Parties are in agreement, however, that if the Court finds spoliation, the proper sanction is an adverse inference jury instruction. (Persoff Decl., ¶ 25.)

Spoliation occurs when a party destroys, significantly alters, or fails to preserve evidence after its duty to preserve arises. *Pro-Com Products, Inc. v. Optimal Sante, LLC*, Case No. 2:20-cv-08369-FLA (Ex), 2024 WL 1219790, at *2 (C.D. Cal. Feb. 2, 2024). Courts may sanction spoliation under its inherent authority. *Leon*, 464 F.3d at 958. A finding of "bad faith" is not a prerequisite to issuing a sanction; "simple notice of potential relevance to the litigation" is all that is necessary. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993); *Leon*, 464 F.3d at 959 ("A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were *potentially* relevant to the litigation before they were destroyed.'").

Under this standard, Plaintiffs willfully spoliated the signs. As discussed above, Plaintiffs' duty to preserve triggered no later than March 2022 and likely months earlier than that; despite this, Plaintiffs acknowledge they destroyed the signs—a fundamental aspect of their case—long after that duty triggered and as recently as earlier this year. As a sanction, Defendants seek a jury instruction that it may infer that the content of the destroyed signs would have been unfavorable to Plaintiffs' claims that they were peacefully protesting and not seeking to harass or intimidate the Pony Ride patrons. Defendants do not seek a more severe sanction because the prejudice to Defendants is limited by the fact some of Plaintiffs' signs are visible in videos and photographs from the protests. There is prejudice, however, as Plaintiffs' spoliation has prevented Defendants from using the signs as demonstrative exhibits at trial and demonstrating to

the jury, for example, that Plaintiffs signs were easily readable from 15 feet away, countering Plaintiffs' claims that the July 2022 rules improperly restricted their speech.

## C.   DEFENDANTS ARE ENTITLED TO AN AWARD OF REASONABLE ATTORNEYS' FEES

Defendants' counsel has expended substantial time and resources in efforts to obtain Plaintiffs' compliance with their discovery obligations, from meet and confer letters, calls, and emails, to motions to compel, to eliciting testimony at deposition and thoroughly reviewing the documents Plaintiffs have produced to determine what is missing and the significance of what was produced, culminating in the preparation of this Motion. Judge Kim has sanctioned Plaintiffs $4,500 for their discovery misconduct at issue in Defendants' Motions to Compel, which they have paid, but Defendants are additionally entitled to an award of reasonable attorneys' fees for the time spent in preparing this Motion. *See Leon*, 464 F.3d at 961 (affirming $65,000 attorneys' fee sanctions award in addition to affirming dismissal sanction). Defendants therefore request permission to bring an application for an award of attorneys' fees incurred in preparing this Motion.

## IV.   CONCLUSION

Plaintiffs have engaged in egregious misconduct by deleting their internal communications at the same time they were planning this lawsuit. In doing so, they deprived Defendants, the Court, and the jury of the truth, "casting a pall" over the litigation. Therefore, this case warrants the most severe sanction of dismissing the claims of all Plaintiffs with the exception of Amanda Lundberg and Jeff Fleiss, with prejudice, and awarding Defendants their reasonable attorneys' fees incurred in bringing this Motion. If Lundberg or Fleiss proceed with claims regarding signs used at protests, a permissive inference jury instruction in Defendants' favor is warranted.

DATED:    September 4, 2025      Respectfully submitted,

HYDEE FELDSTEIN SOTO, City Attorney
DENISE C. MILLS, Chief Deputy City Attorney
KATHLEEN KENEALY, Chief Asst. City Attorney
GABRIEL S. DERMER, Asst. City Attorney
CARR A. TEKOSKY, Deputy City Attorney
JOSEPH S. PERSOFF, Deputy City Attorney

By:   /s/ Joseph S. Persoff
      Joseph S. Persoff
      Deputy City Attorney
      Attorneys for Defendants
      CITY OF LOS ANGELES, et al.

DEFENDANTS' MOTION FOR SANCTIONS